# COALTER v. SALT LAKE CITY.

No. 2245.   Decided January 16, 1912 (120 Pac. 851).

1. MUNICIPAL CORPORATIONS—IMPROVEMENTS—DAMAGES—RIGHT TO
SUE.   Damages for injuries to property from street improve-
ments are recoverable by the provisions of the Constitution
by direct action in a court of competent jurisdiction, so that
a property owner is not precluded from suing for her dam-
ages by having paid a special tax levied against her property
for the cost of the improvement.[1]   (Page 298.)

2. MUNICIPAL CORPORATIONS—IMPROVEMENTS—DAMAGES.   Where an
owner of property purchased it long after the city had estab-
lished a proper grade, and made all of the street conform
thereto, except the sidewalk space, and built a house and
raised the level of the lot, any injury to the property caused
by the lowering of the sidewalk to the established grade was
caused by the imprudence of the owner in failing to notice
the grade established and improve with reference thereto,
and cannot be recovered from the city.[2]   (Page 299.)

APPEAL from District court, Third District; *Hon. M. L.
Ritchie,* Judge.

Action by Agnes M. Coalter against Salt Lake City.

Judgment for plaintiff.   Defendant appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*H. J. Dininny* and *P. J. Daly* for appellants.

*Smith & Price* for respondent.

FRICK, C. J.

Respondent recovered judgment against appellant for dam-
ages to her residence property, which in her complaint she

---

[1] Webber v. Salt Lake City, 40 Utah, 221, 120 Pac. 503.

[2] Kimball v. Salt Lake City, 32 Utah, 253, 90 Pac. 395, 10 L. R.
A. (N. S.) 483, 125 Am. St. Rep. 859; Hempstead v. Salt Lake
City, 32 Utah, 261, 90 Pac. 397; Felt v. Salt Lake City, 32 Utah,
275, 90 Pac. 402.   Distinguished.

alleged were caused by lowering "the grade of the sidewalk and street for the entire distance in front of said premises to about six feet in width, and to a depth of about four feet below the natural grade of said sidewalk." While the evidence is of considerable volume, and upon some matters in sharp conflict, yet upon the material and controlling facts there is practically no dispute.

The facts which control this decision, in substance, are as follows: In 1902 respondent purchased a certain lot in the northeastern portion of Salt Lake City fronting 57¾ feet on what is known as Third Avenue, and extending into the block 82½ feet. When she purchased said property, an old dwelling house was upon it which was caused to be removed, and in the year 1903 she erected a two-story, ten-room, brick dwelling house, with a cellar upon the lot in question. In excavating for the cellar a considerable amount of surplus earth was obtained, which was spread on the natural surface of the lot by means of which, according to the testimony of respondent's husband who superintended the making of the improvements of the lot, the natural surface of the lot was raised on the west lot line about two feet and on the east line about eighteen inches. Mr. Coalter, the witness in question, however, simply approximated to what height the lot was raised, frankly admitting that he was only giving his best judgment in that regard, and that he had never made any actual measurements. According to the testimony of the city engineer, who purported to give the height the original surface of the lot was raised by the earth obtained from the cellar by actual measurements with instruments, the height of the west lot line was given as 3.4 feet and on the east line as 1.6 feet. The difference given by the city engineer between the west and east lot lines seems to be the true difference for the reason that Mr. Coalter himself said that in making the fill he aimed to make the front of the lot level, or nearly so, and the natural incline of the lot from east to west is about the difference stated by the city engineer, as appears from the profiles in evidence. Third Avenue, which runs east and west, has been used as a thoroughfare for a great many years.

In 1902, and for many years prior thereto, and up to the time of the trial, according to the testimony of respondent's husband, and that of other witnesses, double tracks had been laid along the center of the street in front of the property in question, and street cars during all of that time had been and continued to be operated on said street for a long distance east and west of said property. The original surface of the ground through the block in which respondent's lot is located was somewhat irregular or undulating, but the surface inclined, as we have said, towards the west. Respondent's lot, however, seemed to be upon a natural ridge somewhat higher than the ordinary surface of the block. In preparing the street for travel, and also in grading it for the purpose of laying the street car tracks, the natural surface thereof was lowered some, and subsequently, in improving the street car tracks, it was perhaps lowered some more, so that there was an even or uniform incline from the east to the west end of the block in question. In preparing the street for travel, and in laying the street car tracks, only the surface of the traveled portion of the street was lowered and made regular, leaving that portion of the street where the sidewalk is laid and for a little distance beyond and extending into the street proper higher than the surface of the street, and somewhat more irregular, although that portion had also been lowered some from the natural surface in some places more or less, and the walk proper is what is commonly designated as a gravel walk. Respondent's husband testified that he acted for her in purchasing the property in question in 1902, and that he then was, and for many years prior thereto had been, thoroughly familiar with the property and the condition of the street and sidewalk in front of and adjacent to the same. In the fall of 1907 appellant gave the usual statutory notice that it contemplated making improvements along Third Avenue by laying permanent cement or concrete sidewalks along both sides thereof, and, to defray the costs of said improvement, a speial tax was levied on all of the abutting lands in front of which the sidewalks were about to be laid, including the lot of respondent. She protested and claimed damages, but her pro-

test and claim of damages were disallowed, and she was required to pay, and did pay, the cost of constructing a permanent cement walk in front of her lot. We assume that since the law provided no way by which the city council could adjust and allow damages as part of the proceedings of making the improvements, no damages could have been properly allowed, and, for that reason, as well as for the reason that she was not damaged, her protest and claim were disallowed. Before laying the cement walk, the city, through its contractor, caused the space where the sidewalk was to be laid, as alleged in the complaint, to be excavated where necessary so as to make the incline from east to west regular and to conform to the surface of the grade of the street as it had been for many years, as we have explained. In making the excavation for laying the walk in front of respondent's lot, the earth was removed below the original surface as it was before respondent had raised that surface with the earth obtained from the cellar to the depth of 3.2 feet on the west lot line and 2.5 feet on the east lot line. The actual distance, however, from the tread of the walk to the top of the lawn as the same was raised by the earth from the cellar was 6.6 feet on the west lot line and 4.1 feet on the east lot line. From this it is apparent that the city in laying the walk lowered the original or natural surface of respondent's lot as it was when she purchased it to the extent of 3.2 feet on the west and to 2.5 feet on the east lot line. We have given the engineer's figures because they represent actual measurements, and because respondent's husband, while disagreeing with the engineer's figures somewhat, only approximated the depth of the excavation, and because from the other evidence in the case it is manifest that the engineer's figures are correct. Moreover, whatever difference there may be between the figures given by respondent's husband and those given by the engineer is, for the purposes of this decision, not of controlling importance. It was also made to appear that in making the excavations for the sidewalk no part of the street, except that portion which extended beyond the traveled section, and which belonged to the sidewalk proper, was excavated; further, that

respondent in filling in and in terracing or sloping the front of her lot extended the filling or terrace within the space where the sidewalk was placed, so that in excavating for the sidewalk a perpendicular embankment had to be created which it was necessary to protect by a retaining wall. It is, however, also to be observed that if the slope or terrace had not been extended into the sidewalk space, in view of the nature of the soil, a retaining wall of some height might, nevertheless, have been necessary, but it is equally true that if respondent had not added an additional amount on top of the surface as it was when she purchased the property, and if she had not terraced the front thereof into the sidewalk space, a retaining wall might have been obviated altogether, but, if not entirely obviated, the ingress and egress to and from her property would, nevertheless, not have been materially changed from what it would have been if she had not raised the surface of the lot. Respondent at no time had constructed a driveway into her lot, and she always had the coal and other substances carried in to the bins from the wagons from the street. It is also shown that a driveway could have been constructed into the lot from the street before the sidewalk was laid at considerable less expense than after it was laid, but here again the difference of cost is almost if not entirely due to respondent's own act in raising the original surface of the lot before the sidewalk was laid and in extending the front of the terrace into the space where the walk had to be placed to conform the same to all of the other property in the block. Before the cement walk was laid, respondent, by means of a number of steps, entered the front porch of her house from the sidewalk. After the cement walk had been laid, however, she could not do so because the edge of the porch is too near the inner edge of the sidewalk to admit of building proper steps directly to the front of the porch. The steps had to be constructed on the east side of her dwelling leading to the top of the lawn and thence by turning to the left, and by means of other steps an entrance to the front porch by a side entrance was obtained. Appellant had pleaded, and at the trial respondent's counsel admitted the fact subject to its

materiality, that in 1893 appellant had duly and regularly established a street and sidewalk grade along Third Avenue extending in front of the property in question. Counsel also admitted that in making the excavation for and in laying down the cement walk due and proper care was exercised, and that respondent suffered no injury or damage from any negligence or want of care in constructing the walk, and that appellant in making the excavation was in fact doing it to make the sidewalk grade conform to the traveled portion of Third Avenue. It was also shown that neither the street nor the sidewalk had been lowered to the actual grade established in 1893, and that such was done by order of the city council, and that, if the grade had been lowered to that point, the walk would have been still lower than it now is. The court, upon motion of respondent's counsel, and over appellant's objection, after all the evidence was in, excluded the foregoing admissions and evidence relating to the grade of 1893, and submitted the case to the jury as though no grade had ever been established by appellant.

Counsel for appellant have assigned a large number of errors of which we shall consider only such as in our judgment present some question of law, and which in some way have affected appellant's legal rights.

Counsel for appellant have argued at great length that respondent is prevented from recovering in this action because she paid the special tax levied against her property covering the cost of constructing the cement walk in front thereof. While this objection might have much force under the statutes of some jurisdictions, it is without merit in this state. Consequential damages to property which are caused by making public improvements are recoverable under the Constitution of this state, and not by virtue of statute. (*Webber v. Salt Lake City*, 40 Utah, 221, 120 Pac. 503.) While it may be that, if the city authorities could adjust and allow damages caused to property by making public improvements, the remedy would be more convenient and speedy; yet so far as we know, there is no way provided by which such damages can be recovered

except by a direct action in a court of competent jurisdiction. When the special tax was levied against the respondent's property, all she could do, therefore, was to pay the taxes, or permit her property to be sold to pay the same. She chose the wisest course by paying it. She, therefore, had the right to bring this action in the form and manner she did, and, if she is not prevented from recovering upon some other ground than that of estoppel, as urged by counsel for appellant, she should prevail.

The most serious question in this case is presented in two ways: (1) By the refusal of the court to direct a verdict in favor of the appellant upon its request after all the evidence was before the court and jury; and (2) by the refusal to consider the admissions of respondent's counsel and the evidence with regard to the establishing of a street and sidewalk grade by appellant in 1893, and in making the street and sidewalk in question conform to the street grade under the direction of the city council. As we have pointed out, appellant neither established a street grade after respondent had improved her property, nor did it lower or raise the street as such to an established grade. Respondent's husband frankly conceded that the traveled portion of the street in front of the premises in question was left in the condition it was when she purchased the property, built her house, and that it had been in for many years prior thereto. All that was done was to make that portion of the street on which the cement walk was laid conform to the traveled portion of the street proper. A grade had been established in 1893, and all of the street except the sidewalk had within certain limits been made to conform to such a grade. The fact that neither the street nor the walk was lowered exactly down to the point of the grade of 1893 is so far as respondent's claim here is concerned entirely immaterial. The records showing the grade were public records made and kept by the city in the proper office, which, upon application, were accessible to all. The space where the sidewalk was when respondent purchased and improved her property was practically left in its natural state. While it had

been lowered somewhat below the surface of the lot, and had been made more regular for the purpose of making it passable for pedestrians, yet it was merely an earth or what is called a gravel walk, which, it must be presumed, any one would know would sooner or later be replaced by a permanent walk, just as was done. It must also be presumed to have been apparent to all that in all probability when a permanent walk would be constructed it would be laid so as to conform to the street grade as it was when respondent purchased her property. When, therefore, she undertook to improve her lot, she was required to take notice of the fact that a street grade had been established in front of her property, and that, while only that portion of the street which was used by the street cars and teams had been lowered, at some time a permanent sidewalk would in all probability be laid, and, when laid, it would be lowered to conform to the other portions of the street. If, instead of raising her lot, she had lowered it, as from all indications it was apparent she should have done, or if she had even refrained from raising it and had terraced it so as not to bring the edge of the terrace too close or within the sidewalk space, she would have required no retaining wall, nor would the ingress and egress to and from her property have been materially interfered with or have been made inconvenient. Assuming that appellant had excavated for the cement walk, and had laid it before respondent had purchased the lot in question, and assuming, further, that she had raised it by placing more earth upon the surface thereof and by doing so was required to put up retaining walls, or that the ingress and egress to and from her property was made more difficult, would any one seriously contend that the appellant would be liable in damages to respondent upon the ground that she was required to put up a retaining wall, or that the ingress and egress to and from her property was made less convenient where the result was that of her own acts? In legal effect is not that just what happened? While the appellant, when respondent purchased the lot, had not actually excavated the space where the cement walk was laid, it had actually excavated the other portions of the street, and by

establishing a grade had at least given constructive notice to all property owners along the street that, when a permanent sidewalk would be laid, it would be done to conform to the other portions of the street. Appellant was not required to excavate the entire width of the street, including the sidewalk space, at the same time, and because it did not do so made no material difference so far as respondent's rights are concerned. This is well illustrated by Mr. Justice Earl in *Whitmore v. Tarrytown*, 137 N. Y. 415, 33 N. E. 490, where, in passing upon conditions somewhat similar to those that are present here, it is said:

"A large part of the earth in the embankment next to the petitioner's property has since been removed, but the grade of the street has not been changed. The grade of the street having been established in 1882, it was not altered or changed by the cutting down of the embankment on either side of the street for the purpose of making the whole street conform to the grade thus established."

In that case the traveled portion of the street had been cut down to the grade established in 1882, and a number of years later that portion of the street where the sidewalk was to be laid was also cut down, and the action, as in the case at bar, was based upon the act of the city in causing the space where the sidewalk was to be laid to be excavated and lowered. The case at bar, however, is much stronger in its facts against the respondent as an abutting owner than was the New York case just referred to against such an owner. In the case at bar respondent purchased and improved her lot after the street grade had been established and after the major portion thereof had been lowered approximately to the established grade. Permanent street car tracks had been laid and street cars were being operated on the street when appellant purchased her property. The space for the sidewalk was, however, left in practically its natural state, which was considerably higher than that portion of the street which had been brought to grade. It was therefore apparent that whenever a permanent sidewalk would be laid an excavation would have to be made in front of respondent's lot to bring it down to the level of the

street. Respondent, therefore, in improving her property,
should have done so by keeping in mind the established grade,
and, further, the fact that the sidewalk space remained higher
than the street, not because it was the intention to permanent-
ly leave it so, but because it was not necessary then to lower it
to conform to the street.

No doubt, if respondent desired to raise her lot, she had a
perfect legal right to do so, but in doing so she was also re-
quired to pay some heed to the right of appellant to lay down
a permanent sidewalk, and in doing that work to make the
street conform to the established grade. From all the evi-
dence in this case it is not only palpable, but it is so clearly
established, that reasonable minds cannot differ that, if re-
spondent had improved her lot in accordance with the cir-
cumstances that surrounded her, she would have suffered no
damage whatever. This is easily demonstrated. Can any
one seriously contend that a terrace ranging in height from
3.2 feet on the west lot line to 2.5 feet on the east lot line
could possibly injure or damage respondent's property? Yet
this is precisely what appellant lowered the sidewalk below
the surface of the lot as it was when respondent purchased it.
The difference between the foregoing and the height of the
terrace after the walk was laid was caused by respond-
ent herself in raising her lot. But, conceding that a terrace
of a height of a little over six feet on the west and a little
over four feet on the east lot line was necessary, would such
a terrace, if properly sloped and a sufficient distance from
the sidewalk, be any injury or damage to residence property?
Is it not a condition that is so generally prevalent that it is
known to all that such a terrace is not only not an injury to
residence property, but that in some respects it is desirable,
since it elevates the dwelling house above and farther away
from the street? Where property is used for business pur-
poses, no doubt a different rule would apply. But a drive-
way could still be constructed along the east lot line of re-
spondent's frontage at a reasonable cost, and, if respondent
had not raised the surface of her lot, the excavation made by
appellant would not have materially affected the cost of con-

struction of such a driveway. If, therefore, it is less convenient and more expensive to make a driveway. because respondent raised her lot, she, and not the appellant, should be held responsible.

Counsel for respondent, however, contend that under the rule laid down in *Kimball v. Salt Lake City,* 32 Utah 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483, 125 Am. St. Rep. 859, *Hempstead v. Same,* 32 Utah, 261, 90 Pac. 397, and *Felt v. Same,* 32 Utah, 275, 90 Pac. 402, she is entitled to recover for any change of grade, although it be a change of the natural grade, provided such change in some way and to some extent injures or damages her property. There is absolutely nothing said in those cases from which it could be inferred that an abutting property owner need pay no attention to established grades in improving his property where the street had not been brought to grade for its entire width when the improvements by the abutting property owner are made. What we held in those cases, in effect, was that, when a city permits abutting property owners to improve their property in accordance with a street grade which has been recognized by the city as an established grade for a long term of years the city may not depart from such a grade without compensating the abutting property owner for any substantial damages that he may sustain to his property and the improvements thereon by reason of making the change. In the cases referred to, all of the owners had improved their property to conform to a grade as the same had been used and recognized by the city for many years. The city, after the abutting property there in question, and this we held the city could not do so as almost to cut off ingress and egress to and from the property there in question, and this we held the city could not do without paying the damages caused by the change of grade under our constitutional provisions. But the very principle upon which the right to recover in those cases is based operates to prevent a recovery in the case at bar. In those cases the principle invoked in favor of the abutting owners was the long acquiescence on the part of the city in an apparently established grade from which the property owner could assume that he was

safe in improving his property to conform to that grade, and that, after he had so improved it, the city would not change the grade to his detriment. In the case at bar, however, the city had established a proper grade, and it had also made all of the street, except the sidewalk space, conform to such established grade years before respondent purchased or improved her property. If an abutting owner, therefore, may, in relying on a particular grade, improve his property to conform thereto, as was the case in the cases already passed on by us, he, in improving his property, must also have due regard for established grades, and improve his property in conformity therewith, although the entire street has not yet been made to conform to such a grade. To permit an abutting owner to recover damages which are caused to his property by reason of a proper and careful construction of a sidewalk by making it conform to a grade which had been established, but not fully executed before the abutting property was improved, and which damages are caused by the imprudence of the abutting owner in making his improvements in disregard of the established grade, as is the case here, would be an abuse, rather than an enforcement, of the constitutional provision which requires that private property shall not be damaged for public use. The provision is wholesome and just, and should receive a fair and reasonable application. No hard and fast rule, either by the method of inclusion or exclusion of all cases in which damages are to be given or withheld under the constitutional provision, can be laid down. All that can be said is that, under constitutional provisions like ours, *prima facie* at least, damages that are caused to private property by making public improvements are recoverable. There may be cases, however, where the injury and damages complained of may be due to the owner's own imprudence in improving abutting property, or, in making such improvements, he may do so in disregard of established grades, and by reason of his own acts his property may, in some way, be injured or damaged. When such is the case, the municipality making the public improvement may not be liable. The rule for allowing damages in street improvements under constitutional pro-

visions like ours is perhaps as well stated by the Supreme Court of Alabama in *Montgomery v. Townsend,* 84 Ala. 478, 4 South. 780, as it can be.   Under the rule there laid down, the damages claimed in this case cannot be allowed.   If damages are to be allowed abutting owners under facts and circumstances like those in the case at bar, then, as is well said in the New York case to which we have referred, the city may not make the slightest changes in its streets where such changes may in any degree affect the property of an abutting owner without being called on for damages, although such changes are made to conform the street to a grade which was established long before the abutting owner improved his property, and which changes are necessary to make and maintain the street reasonably safe for travel.   In submitting this case to the jury, the court assumed, as a matter of law, that appellant was liable in bringing the sidewalk to the established grade, regardless of respondent's acts in making the improvements on her property, and practically all that was submitted to the jury was the extent of the damages.   In this the court erred.   Under the pleadings and the undisputed facts and admissions of respondent's counsel to which we have referred, the court should have directed the jury to return a verdict for the appellant.

In view of the foregoing conclusion it becomes unnecessary for us to pass upon appellant's other numerous assignments.

The judgment is reversed and the cause remanded to the district court, with directions to grant a new trial, and to dispose of the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY and STRAUP, JJ., concur.