GRAY et al. v. SALT·LAKE CITY.

No. 2533. Decided February 3, 1914. Rehearing denied February 25, 1914 (138 Pac. 1177).

1. EMINENT DOMAIN—STREETS—CHANGE OF GRADE—RIGHT TO DAMAGES. Where a city, to make a street more convenient for travel, has lawfully established a grade, and the owner, after its establishment, but before it is physically carried into effect, improves his property without regard to the grade, the owner cannot recover damages against the city, if it, afterwards, in grading the street to conform to the established grade, interferes with the convenient use of the abutting owner's property, notwithstanding the constitutional provision that private property shall not be taken or damaged for public use without just compensation.[1] (Page 212.)

2. MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS. Under Comp. Laws 1907, section 206, subd. 8, giving cities power to lay out, grade, and otherwise improve streets, a city may establish street grades, and improve the street so as to conform thereto, if the

---

[1] Kimball v. Salt Lake City, 32 Utah, 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483, 125 Am. St. Rep. 859; Hempstead v. Salt Lake City, 32 Utah, 261, 90 Pac. 397; Webber v. Salt Lake City, 40 Utah, 221, 120 Pac. 503, 37 L. R. A. (N. S.) 1115.

grades are established for the purpose of making the streets safer and more convenient for travel. (Page 213.)

3. MUNICIPAL CORPORATIONS—STREETS—ESTABLISHED GRADE—ABANDONMENT. A city may, either expressly or impliedly, abandon a street grade already established, and after abandonment the situation is as though no grade had been established, and an abutting owner may assume that the city elects to consider the natural surface grade as the grade to be used for travel; the question of abandonment being ordinarily a mixed question of law and fact. (Page 216.)

4. MUNICIPAL CORPORATIONS—STREET GRADES. A city cannot be compelled to establish its grades upon all the streets, or upon the whole of any one street, within a particular time. (Page 216.)

5. MUNICIPAL CORPORATIONS—STREET GRADES. Since the abutting owners are entitled to have a voice in determining whether a street should be graded, the act of grading a street may be deferred for a long time without abandoning the grade as established, so that those who wish to improve their property may make their improvements conform to the established grade. (Page 216.)

6. EMINENT DOMAIN—ESTABLISHMENT OF GRADES. If any abutting owner does not conform improvements of his property to grades established by the city, he cannot recover resulting damages from the city, if the grade established is made for legitimate street purposes, such as to make the street safer and more convenient for public use; but, if it is made merely to ornament or beautify the street, the abutting owner may recover for damage to his real estate, as distinguished from his improvements, if such improvements were made after the grade was established. (Page 220.)

7. EMINENT DOMAIN—ESTABLISHMENT OF GRADE. A purchaser of property purchases with the implied consent that the street must be made reasonably safe and convenient for travel, and cannot complain that it is lowered or filled to make it safe for travel, so long as the city has established a grade so as to inform him of the extent to which it would be lowered or raised. (Page 221.)

8. MUNICIPAL CORPORATIONS—STREETS—CHANGE OF GRADES. In reducing inequalities in streets by changing the grade, more latitude should be allowed to large cities than to the smaller cities or country towns; paving being a necessity in the larger cities. (Page 222.)

9. EMINENT DOMAIN—STREETS—CHANGE OF GRADE—ACTIONS FOR DAMAGES—CONDITIONS PRECEDENT. The fact that an abutting

property owner did not protest against paying a special tax levied for changing the grade of the street would not prevent him from maintaining an action for damages from changing the grade.[2] (Page 223.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Mary W. Gray and another against Salt Lake City.

Judgment for plaintiffs. Defendant appeals.

REVERSED AND REMANDED FOR NEW TRIAL. ·

*H. J. Dininny, Aaron Meyers* and *W. H. Folland* for appellant.

*W. H. King* and *Samuel Russel* for respondents.

FRICK, J.

The plaintiffs, respondents in this court, brought this action against Salt Lake City, the appellant, to recover damages to their residence property, which, it is alleged in the complaint were caused by appellant by raising a street from its natural level as it was in front of the property in question and the adjoining properties. The city, in its answer, justified the making of the fill, and pleaded an estoppel, upon the ground that respondents had offered no objection or protest to the grading of the street, and had paid the special taxes assessed against them for that purpose. The controlling facts, brieflly stated, are as follows:

In 1893 Salt Lake City, in a legal and proper manner, established a grade for First West Street, the street in question, and for a large number of other streets in said city. The records and profiles were kept on file in the engineer's office, and were kept so as to show just what the grade would be when carried into effect in front of any particular prop-

---

[2] Coalter v. Salt Lake City, 40 Utah, 293, 120 Pac. 851.

erty affected by the grade as established. It was also made
to appear that by examining said profiles any one interested
could at any time ascertain just what fill, if any, or the cut,
if any, in front of any particular property would be in case
the city carried the established grade into effect. The fill in
front of the property in question along the sidewalk line, in
order to make the street conform to the grade aforesaid,
would have been four and six-tenths feet. When the grade
was established, as aforesaid, the property in question was
an unimproved city lot situate at or near the center of the
block between Third and Fourth North Streets on the west
side of First West Street, which street runs north and
south. The lot was in a sort of depression; that is, it was
lower than were the lots on either side of it. The natural
surface of the ground sloped or declined toward the lot in
question from the south, north, and from the east, and con-
tinued to descend towards the west. The lot was improved
by the owner thereof in 1904 by building thereon a brick
cottage with all modern improvements. The respondents
purchased the property in January or February, 1906, in
practically the same condition it was left in when completed
by the owner. It seems that the east margin of the street
was higher than the west one, and, while the city had from
time to time filled in the street somewhat in front of the
property in question, yet, according to the testimony of one
of the respondents, which the jury were authorized to be-
lieve, no real attempt was made to fill in the street, so far as
to bring it to the established grade, until several years after
they had purchased the property. In 1908 the city council
modified the established grade to the extent of reducing
the fill in front of the property in question from four and
six-tenths feet to about two and five-tenths feet. One of the
respondents testified that the fill as made on the sidewalk
line immediately in front of the property was about thirty
inches. We refer to this only because it is a fact. The
change of grade being beneficial to the respondents, we shall
not refer to that fact hereafter as having any controlling in-
fluence in the case. After the grade had been reduced as

aforesaid, in 1908 and 1909, for the purpose of raising the
street up to the grade, and to construct permanent sidewalks
along both sides of the street, which, up to that time, were
merely dirt or gravel walks, the city filled in the street to
conform to the grade of 1893 as modified as before stated.
There is no claim that the city acted unlawfully or negli-
gently in grading the street; but it is claimed that in making
the fill the property in question was, nevertheless, damaged;
that is, it was made less desirable, and hence less valuable
for residential or rental purposes. Perhaps it is just as well
to permit one of the respondents to state the nature of the
injury to the property in her own words.

She said:

"The filling in the sidewalk in front of our premises has
damaged it in the way of inconvenience to ourselves and in
the way of getting to the coal and things of that kind. It
bars us in a measure in getting at the place as easily as we
did before. We have to go down and up steps, four steps
from the sidewalk down. It leaves the place in a sort of
hollow. Before that it was level with the sidewalk."

She further testified that when the house was built the
front porch floor was about the same height as the present
fill in the street; that it required four steps to reach the floor
of the porch, and after the street was filled it also required
four steps from the lot level to reach the top of the cement
sidewalk which had been laid by the city.

On cross-examination she admitted that there never had
been a driveway into the lot from the street in front. Upon
that point she said:

"There never was any way to get into property with a team
only from the back. One could get into the barnyard, but
not beyond that. There was no way to drive in from in
front."

From her testimony it is also made to appear that when
respondents purchased the property the street along the side-
walk was practically even with the surface of the lot, but
that the street proper might have been a little higher, es-
pecially so along the easterly margin thereof; that access to

the rear of the property is just as it was before the street was raised, and the only inconvenience suffered by respondents in using the property is that they must pass up and down four steps in coming from and going on the sidewalk as explained by the witness. Respondents also produced expert evidence respecting the depreciation of the value of the property by reason of the fill. The jury found for respondents, and awarded them damages in the sum of $871.95. Judgment was entered accordingly, and we are asked to reverse the same for the reasons hereinafter stated.

The theory on which the district court tried and submitted the case to the jury is perhaps best reflected from the court's charge. The court, among other things, charged as follows:

"(3) You are instructed that it is established by evidence not disputed in the case that in the year 1893 the city council of Salt Lake City fixed a grade for the sidewalk in front of plaintiffs' premises by resolution of the city council, and had the same filed in the office of the city engineer of said city, and that such grade so fixed was more than two feet higher than the sidewalk as laid by the defendant city in the year 1909. You are instructed that such grade fixed by the city council, and so filed in the city engineer's office, was a matter of public record, open to the inspection of the public by any person interested therein. *You are further instructed that, if you find from the evidence that prior to the time that plaintiff's house was built the said city, for the purpose of making such street, as distinguished from the sidewalks, to conform to said grade of 1893, filled in the same to substantially the same height as the same was found in the latter part of the year 1909, and has since continued to be, and that an ordinarily prudent person by observing its condition at the time the house was built, and by inquiry at the city engineer's office, and an inspection of the grade fixed by ordinance, would have understood that it was actually the intent of the city to proceed within a reasonable time to raise the sidewalk abutting plaintiffs' property to conform to the grade fixed in 1893,* then the court instructs you it was the duty

44 Utah—14

of the owner of the ground at the time of building the house to take notice of such grade fixed by the city council, and to build his improvements so as to prevent or diminish as far as was reasonably practicable the damages that would result to such improvements by reason of carrying into force and effect the grade so previously fixed; and if you find from the evidence in this case that a reasonably prudent person would have so built his improvements, then the court instructs you that for any damage resulting to plaintiffs' premises by reason of such lack of ordinary caution and prudence on the part of the owner the defendant city is not liable.

"(4) You are instructed that the burden is upon the defendant city to prove by a preponderance of the evidence that the conditions of the street were such as to convey notice to an ordinarily prudent owner that the city was acting upon the grade theretofore fixed by the city council, and that it intended to make the sidewalk abutting plaintiffs' property conform to such grade. You are further instructed that, unless you find from the evidence that the city had acted upon grade so fixed by the city council, and had made such street conform thereto to such extent as to carry such notice of its intent to make the sidewalk conform thereto, then the court instructs you that the property owner might act upon the assumption that the city acquiesced in the grade of the street as he found it to actually exist at the time of building his house, and could build his house on the assumption that the street as he found it was the one to be maintained.

"(8) You are instructed that the burden is on the plaintiffs to prove the amount of damages, if any, they have suffered, *and you are further instructed that the burden is on the defendant city to prove the amount that a prudent owner could and should have prevented by the exercise of ordinary caution.*"

The parts of the charge italicized were excepted to by appellant, and paragraph four thereof was by the appellant excepted to *in toto*.

Appellant's counsel offered a large number of requests to charge, and their theory of the case is illustrated from the following requests:

"(12) If you find from the evidence that the city, before the purchase of the house in question by the plaintiffs, duly established a street or sidewalk grade on First West street in front of the property of the plaintiffs, which grade called for a fill of several feet on the sidewalk part of said street abutting plaintiffs' said property, and that the record of said grade was in the office of the city engineer of said city, and open to public inspection, and that the plaintiffs might have ascertained such fact by the use of ordinary prudence, and did not, they are not entitled to recover in this action."

"(16) If you find from the evidence that before plaintiffs bought the place in question there had been duly established by the city council a grade which called for a fill in the sidewalk in front of plaintiffs' property, and that said grade was in force at the time plaintiffs bought the property, and that the only damage to plaintiffs' property was caused in making said sidewalk conform to said grade, the plaintiffs are not entitled to recover in this action."

The requests were refused, and exceptions were duly noted, and are now assigned as error by appellant.

It is strenuously insisted by appellant's counsel that the court erred in stating the law in those portions of the charge that were excepted to by them. Counsel for respondents, upon the other hand, contend that the charge conforms to the law as laid down by this court in *Kimball v. Salt Lake City,* 32 Utah, 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483, 125 Am. St. Rep. 859 ;*Hempstead v. Salt Lake City,* 32 Utah, 261, 90 Pac. 397 ; and in *Webber v. Salt Lake City,* 40 Utah, 221, 120 Pac. 503, 37 L. R. A. (N. S.) 1115, not yet officially reported. We cannot agree with this contention. In the first two cases the question passed on was whether the city was liable for damages which were caused by changing an established grade in the street, where such change injured or damaged abutting property. We there held that for damages caused by changing an established grade the city was

liable. Precisely the same question was presented and decided in *Webber v. Salt Lake City, supra.* The gist of the decisions in those cases is stated in that case thus:

> "This case, so far as the question of a change of an established grade is concerned, falls squarely within the decisions of this court in *Kimball v. Salt Lake City;* . . . *Hempstead v. Salt Lake City;* . . . and *Felt v. Salt Lake City*, 32 Utah, 275, 90 Pac. 402. In view of the rule laid down in the cases just referred to, the change of grade in this case was clearly a change of an established grade, and, as the evidence is sufficient to sustain such a finding, no further discussion of that question is necessary."

In those cases the facts were that the owners of the property there in question had improved the same by erecting buildings thereon in conformity with what we held constituted an established grade established by the city; that, after the buildings had been so erected, and the property had been improved, the city changed the grade of the street and in so doing materially damaged the abutting property. We held that under such circumstances the owner could recover damages under our constitutional provision that "private property shall not be taken or damaged for public use without just compensation." We are still satisfied that those decisions are in harmony with the great, if not the overwhelming, weight of authority emanating from the courts of states which have a constitutional or statutory provision like the one we have just quoted. The proposition that we are confronted with now is, however, not the one we passed on in those cases.

The question here is whether an abutting owner may recover damages against the city when such city, for the purpose of making a street safer and more convenient for travel, has lawfully established a grade, and such owner, after the grade has been established and declared, but before it is physically carried into effect, builds upon and improves his property without regard to the established grade, and the city, after the improvements are made, grades the street to conform to the grade established as aforesaid, and in doing so interferes with the convenient

use of the property as improved; in other words, where the city causes some injury to the property as improved by reason of making the street conform to the established grade established as aforesaid. While the facts were not precisely the same in the case of *Coalter v. Salt Lake City,* 40 Utah, 293, 120 Pac. 851, as they are in this case yet the principle here involved was, to some extent at least, also involved in that case. We there in effect, held, that where a grade was duly and legally established by the city, the abutting owner was charged with notice of such fact, and in improving his property thereafter was required to do so to conform to the established grade, although the city had not fully carried the grade into effect in front of his property. Indeed, the court charged in this case that the abutting owner was charged with notice of such established grade; but in other parts of the charge the court completely nullified the legal effect of such notice.

It certainly seems clear to us that under the statutes of this state cities are authorized to establish grades, and to improve the streets so as to conform to such grades, when such grades are established for the purpose of making the streets safer and more convenient for public travel. Comp. Laws 1907, section 206, subd. 8, provides that cities have power "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise improve streets, alleys, avenues, sidewalks, parks, and public grounds; and to vacate the same." We do not see how the power to establish grades could be conferred in more direct terms. While counsel for respondent do not concede the right of the city to establish grades in advance, yet they have not offered anything to show why such a power is not conferred by the statute, nor anything why the power which we hold did exist was not lawfully exercised by the city in establishing the grade in question.

Starting out, therefore, with such authority, the city authorities must be allowed some discretion in making it effective. We also think that every purchaser of city property

acquires his title thereto subject to the right of the city to make at least reasonable improvements on the streets so as to make them safe and convenient for public travel. As we shall point out hereafter, there are therefore certain surface inequalities in streets which cities may correct or adjust for the purpose of making the streets safer and more convenient for public use without being liable to the abutting owner whose property is situated upon or near one of such irregularities, where ordinary care and prudence is exercised by the city in doing the work. Moreover, upon the main proposition, as we have stated it above, the best considered cases are practically unanimous that under constitutional provisions like ours a city is not liable for damages caused to improvements made by an abutting owner which were made by him after the grade was duly established, but before it was physically carried into effect, in case the improved property is damaged by carrying the established grade into effect.

The Supreme Court of Louisiana, under a constitutional provision precisely like ours, in *Manning v. Shreveport,* 119 La. 1044, 44 South. 882, 13 L. R. A. (N. S.) 452, after holding that an abutting owner may recover for damages caused to his property by a change of an established grade, in referring to the proposition that he may not do so where he improves his property after a grade has been properly established, and before it is physically carried into effect, the court says:

"But, if the lot be not improved when the grade to be actually established in the future is adopted, no liability for damage to improvements is imposed, and no right of recovery with respect thereto, whether inchoate or otherwise, is created. Under such circumstances, if the then nonexistent improvements are subsequently, and at the option of the owner, placed upon the lot, they come into existence subject to conditions already established, and of which the owner of the lot has notice, and he must govern himself accordingly."

The Supreme Court of Appeals of West Virginia, which state has a constitutional provision in terms like ours, after approving the rule we have adopted in the Kimball and

Hempstead Cases, *supra*, in *Blair v. City of Charleston*, 43 W. Va. 62, 26 S. E. 341, 35 L. R. A. 856, 64 Am. St. Rep. 837, says:

"How is it as to buildings erected after the city had adopted grade lines? The owner erects them with his eyes open to them. The city has the undisputed right to adopt them. If it could not, it would not be able, under such a constitutional provision, to protect itself against immense damages. It may adopt them, and every one must conform to them, however inconvenient. It is a lawmaking power. The city cannot grade all streets to the line at once."

The court, therefore, arrived at the same conclusion that is arrived at by the Louisiana Court in the case quoted from.

In *Davis v. M. P. Ry. Co.*, 119 Mo. 180, 24 S. W. 777, 41 Am. St. Rep. 648, the Supreme Court of Missouri, after holding that an abutting owner may recover damages which he sustains to his property by reason of a change in a street from one established or recognized grade to another, upon the question now before us says:

"Is a property owner entitled to consequential damages to his improvement thereon by reason of the city changing the street to a grade previously established? We think not. When the authorities of a city are of the opinion that the proper improvement of any of its streets may require that they should be graded, though the city may not, at the time, be in a condition to incur the expense, we think it would be entirely proper, in order to protect itself against increased damage and cost, that it should establish a grade to which subsequent improvement of adjacent property could be made to conform. If this is done, and the grade so established is made a matter of record ascertainable by property owners, they should be bound by it."

It was accordingly held that no recovery could be had for any damage which the abutting owner sustained to his improvements by making the street conform to the established grade, where such improvements were made after the grade was established, but before actually carried into effect. The case is followed by the same court in *Clinkenbeard v. City of St. Joseph*, 122 Mo. 641, 27 S. W. 521.

Nebraska has a constitutional provision precisely like ours, which has frequently been applied by the Supreme Court of that state. In *City of Omaha v. Williams,* 52 Neb. 40, 71 N. W. 970, the provision is applied to damages caused to :abutting property by carrying into effect street grades previously established. The rule in Nebraska with respect to the right of recovery in cases where an established grade is ·changed is the same as that adopted by this court in the ·cases already referred to. In referring to the question we are now discussing, that court, in the case last referred to, :approves and adopts the following language from Lewis, Eminent Domain, section 223:

> "One who buys property on a street after a grade has been ·established should improve with reference to the established grade, and not with reference to the natural grade; and where, in such a ·case, a purchaser improves with reference to the natural grade, and the city afterwards cut down the street three feet to the established grade, it was held that no recovery could be had."

Without quoting further from the cases, we refer to the following additional cases, in which it is held that the city has a right to establish grades in advance, and that an abutting owner, after the grade has been established, in making improvements upon his property, must conform to the established grade, and if he fails to do so, and suffers damages by reason thereof, in case the street is made to conform to the grade, he cannot recover: *City of Montgomery v. Townsend,* 84 Ala. 478, 4 South. 780; *In re Opening East 187th Street,* 78 App. Div. 355, 79 N. Y. Supp. 1031; *In re West Farms Road,* 47 Misc. Rep. 216, 95 N. Y. Supp. 894; concurring opinion of Mr. Chief Justice Dickey in *Rigney v. Chicago,* 102 Ill. 82, 84.

Counsel for respondents, however, ask—and the question is pertinent—whether the city may establish a grade, and ·may then indefinitely refrain from making the streets conform thereto. While the question does not admit of a ·categorical answer, yet, it may be said that the city, **3, 4, 5** after having established a grade, may abandon the ·same either expressly or by implication. If it does abandon

such grade, then the matter stands as though no grade had been established, and the abutting owner may assume that the city elects to stand by the natural surface grade in case the street has been opened and is used for travel. Whether a city has abandoned an established grade or not is, however, not purely a question of law, but it is one, ordinarily at least, of mixed law and fact. Where the owner seeks to recover upon the theory that a grade which was established, but not carried into effect, has been abandoned by the city, he should plead and prove the fact, and, if it be found that the grade was abandoned by the city, the case should be tried and determined accordingly. There is neither allegation nor proof in this case that the city had abandoned the grade it had established in 1893 for First West Street. Indeed, the proof in this case is conclusive that the city had not done so. As pointed out in some of the cases to which we have referred, the city cannot be required to carry into effect its established grades upon all the streets, or upon the whole of any one street, in any particular time. Moreover, in this state, the abutting owners have some voice in determining whether certain streets, or certain parts of streets, should be improved by grading or paving them at any particular time or not. The cost of making the permanent improvements in the streets of the cities of this state must be largely borne by the abutting owners, and it is but fair and just that they should have a voice in the matter. A certain portion of a city, or of a street, may therefore develop and improve more slowly than other portions, and hence the making of permanent improvements in the streets by way of grading or paving them may be deferred for a long time, and yet the grade as originally established may not be abandoned, but remain in full force and effect, so that those who may desire to improve their property may safely do so by making their improvements conform to the established grade. This is but fair and reasonable, and works no serious hardship upon any one. Suppose in the case at bar the original owner of the property in question had in 1904 made the lot and the improvements placed thereon conform to the grade of 1893, and the city

thereafter had departed from that grade to the detriment of his property; then counsel for respondents would no doubt be here claiming that the city had no right to change the established grade to the detriment of the abutting owner without his consent, and, having done so, it must respond in damages to the extent of the injury inflicted. Such a claim under the supposed circumstances would be good. But the mere fact that it would be so also shows that the claim in the case at bar, as a matter of justice, is not well founded, since it rests upon the theory that the established grade of 1893 had no binding force or effect upon the abutting owner.

In this connection, however, the further question arises, namely: .

Can a city originally establish any grade it pleases upon any street, and escape liability for injury to property caused by carrying such a grade into effect? Some courts have gone to the extent of holding that the city authorities are vested with the power and discretion to establish any grade, and make the street conform thereto, provided the grade is established before the abutting property is improved. Other courts have taken a different view. The latter courts hold that every purchaser of property abutting upon a street purchases it subject to the right of the city to make certain improvements thereon for the purpose of making the street safer and more convenient for public travel. Those courts, however, also hold that, where a city improves a street for the purpose of affecting outlying property or does so as a matter of beautifying the streets, and in doing these things goes beyond what is necessary to make them safer and more convenient for travel, then the city may be liable to an abutting owner for damages to his real estate (not improvements afterwards made) by reason of making such improvements. The question is discussed to some extent in the cases we have hereinbefore referred to. The rule is stated in the headnote, which reflects the opinion, to the case of *Montgomery v. Townsend, supra,* in the following language:

"  .  .  .  The municipality has authority to change the grade-or surface, either by cutting down or elevating it, from time to time, as may be deemed necessary or proper to render it useful, convenient, and safe as a public thoroughfare.  .  .  .  Under the constitutional provision which requires corporations to make just compensation for property taken, injured or destroyed,  .  .  .  a liability is imposed for injuries caused to adjacent property by a change in the grade or surface of a street or sidewalk, when it goes beyond the extent and purpose of the original taking or dedication, that is, when it is made for ornamentation, or to improve the general appearance of the street, or for an increase of convenience beyond the ordinary standard; and this is, in most cases at least, a mixed question of law and fact."

The same thought is expressed in different language in some of the cases we have cited above. Mr. Dillon, in volume 4 of his excellent work on Municipal Corporations (5th Ed. 1911), in section 1684, discusses the effect of our constitutional provision with respect to the right of establishing a grade in the first instance, and in section 1685 he takes up the legal consequences which follow in case a change is made by the city in an established grade. The author, in a former edition of his work had taken strong ground in support of the unqualified right of cities to establish grades, and to make cuts and fills to any extent, without becoming liable to the owner of unimproved property; but in his fifth edition we think he has somewhat modified his views in that regard. In section 1684, in speaking of the comparative rights of the city and the owner, the author says the owner must be deemed to consent

"that the public authorities may determine grades, and possibly that future changes in grades may be necessary or desirable for the public convenience. He must contemplate that hills within the limits of the street will be reduced from the natural surface, making a cut; that ravines and low places therein will be filled up to the ordained grade or level, leaving an embankment in front of the abutting property. The right to make such improvement of the street for *legitimate street purposes* would seem to be embraced in his grant or dedication to the public.  .  .  .  In view of these considerations, it seems to us clear that, for the original establishment of a grade line and the reduction of the natural surface of the street *for street purposes* to such line, there is no legal right or even natural equity in the dedicator or his assignee to compensation."

But Judge Dillon, in his latest edition, points out that the foregoing statements of the law can be given no force or effect when an established grade to which the abutting owner has made his improvements conform is changed without his consent to his detriment. Under such circumstances the author insists that the constitutional provision against damaging property for public use must be given full force and effect. Here the eminent author again points out that, while a city may in the first instance establish grades without becoming liable under the constitutional provision to the same extent as for a change of grade, yet, in order to avoid liability, such grades should not go beyond making the streets safer and more convenient for travel; that is, as the author says, the grade should not be carried beyond legitimate street purposes. He says:

"For the reasons above suggested, it seems to us that, on principle, the mere provision of the Constitution imposing a liability for property *damaged* for public use does not create a liability on the part of the municipality for reducing the natural surface of the street, in the course of its normal and ordinary improvement for *street purposes proper*, to a grade line for the first time established. If there are cases to the contrary, we doubt whether they are well considered, and think that they are not well decided."

Judge Dillon, with his usual fairness in the foregoing statements, thus, in our judgment, reflects the present state of the law respecting the liability of cities to abutting owners for damages caused by making street improvements. A city may in the first instance establish grades, and the abutting owner must conform the improvements on his property to such grades, and, in case he fails to do so, and is damaged, he cannot recover, provided the established grade is one that is made for legitimate street purposes; that it, to make the street in question safer and more convenient for public use. If it goes beyond that, and is made for ornamentation, or to beautify the street merely, the abutting owner may, by pleading and proving that fact nevertheless recover for any damage he has suffered to his real estàte, as contradistinguished from his improvements, if they were made after

the grade was established. This rule seems to us perfectly fair and just to both the city and the abutting owner.

Every purchaser of property must be deemed to have purchased it with the implied consent that the street on which his property abuts must be made reasonably safe and convenient for public travel. If, therefore, the natural surface of the street is such that it needs to be lowered at one place so as to make it safe for travel, or requires to be filled at another for that purpose, the abutting owner cannot complain so long as the city by establishing a grade informs him to what extent the street will be thus lowered or raised. Suppose the natural surface of a street is such that it is higher on the east side than it is on the west side, and, in order to make the street reasonably safe for the present state of travel upon it during all seasons of the year, it becomes necessary to lower the surface along the east side and to raise it along the west margin, so that an embankment of several feet is left in front of the abutting property upon the east, while a fill of the same extent is made in front of the abutting property on the west; should the city be held liable when it, in a proper manner, and at a proper time, had established a grade showing both the embankment and the fill, so that the abutting owners could safely improve their property to conform to the street when it is finally reduced to the established grade? It would seem that the only safe doctrine is that which enforces the rule that both these owners situated as aforesaid must be deemed to have purchased their property with the implied consent that the street should be improved as aforesaid. On the other hand, if the city makes an unreasonable cut or fill for the mere purpose of ornamentation, then there is no reason why the abutting owner should not be permitted to plead and prove the fact, if it be a fact, and recover accordingly. This latter question, so far as pleading and proof is concerned, is similar to the question of whether an established grade has been abandoned. In this case there is neither allegation nor proof that the fill in front of respondents' property is, under the circumstances, unreasonable, or that it was not made for

what Judge Dillon denominates "legitimate street purposes," or that it was made for what some judges say are merely ornamental purposes.

Some courts hold that, in reducing inequalities in streets, more latitude should be allowed to large cities than to the smaller cities or country towns. While at first blush such a dule seems discriminating, yet, on reflection, it will be found to be both equitable and just. The doctrine is based on the well-known fact that in the large cities paved streets have become a necessity, and that in paving them the grades and inequalities must be reduced to the lowest possible limit, while in the smaller cities and towns such is not the case. It is but reasonable, therefore, that, in the larger cities the abutting owners must yield to the necessities created by their surroundings. That any other rule might result in injustice is easily demonstrated. In this case one of the respondents testified that they had a front yard, which was seeded down as a lawn, comprising about 150 square yards, and that the fill was about thirty inches or two and one-half feet higher than the lawn. If they were allowed at the rate of one dollar a cubic yard of earth for filling the front yard, it would only have cost them $150 to have filled it level with or a little higher than the street. In the face of this fact they claimed $1500 damages, and produced experts who testified that the property in question was damaged to the extent of $1200. Here thus we have property which is conceded to have been in a depression, that is, that it was lower than the surrounding property, and which, by allowing one dollar for a cubic yard of earth, the whole surface of the lot could have been raised to the new surface level of the street for much less than the jury allowed the respondents. If the property was in a depression, then the surface drainage, or some of it at least, of the surrounding property, which was higher, must inevitably have been toward and onto this property, and it, in that condition could not have been so valuable for residential purposes as the adjoining property. When it was purchased, therefore, it is but natural to assume that the price of the lot was abated to conform to its actual

value by reason of its depressed condition. Notwithstanding the fact that respondents presumably abated the price, they are in court asking that their neighbors as taxpayers be required to pay the cost of raising the property to make it conform to the elevation of the property surrounding it and to the street in front of it. When the original purchaser purchased the property in question, we are forced to hold that he did so with the implied consent that the city could fill in the street in front thereof so as to make it reasonably safe for travel, and, in view that the city timely and in proper manner established the grade to which the owner could have conformed his improvements, he cannot complain, in case he failed to do so, and his improvements were made less convenient, for the reason that the city afterwards made the street conform to the established grade. If the original owner could not recover, then under the circumstances of this case, the respondents, as his successors in interest cannot recover, unless they allege and prove (1) that the city had abandoned the established grade when the improvements were made, or (2) that the grade as established was not for legitimate street purposes, but was for ornamentation merely, and hence was unreasonable. Nothing of this character is made to appear in this case, and therefore the judgment, for the reasons stated, cannot be sustained.

Counsel for the city also insist that the respondents were estopped from maintaining the action because they did not object or protest the special tax levied for the improvement. We held, in *Coalter v. Salt Lake City, supra,* that in this state there is no way by which an abutting owner can recover damages to his property which are occasioned by making street improvements except by an independent action in the courts. The city authorities, in levying the special tax for street improvements, are not authorized in that proceeding to pass on or allow damages that may accrue to abutting property by reason of making the improvements. In some states the city authorities are given power or jurisdiction to pass on and allow such damages in the proceeding in which the special tax is levied, and, in case

an owner feels aggrieved, he may appeal from the allowance to the courts. We have no such statute, and therefore the abutting owner has no remedy except through an independent action. The payment of the special tax, therefore, cannot affect his right to bring and maintain an action to recover such damages as under all the circumstances he may be entitled to in accordance with the doctrine herein stated.

While there are other questions argued by appellant's counsel, yet, in our judgment, all have been sufficiently answered by what has already been said.

The judgment is therefore reversed, and the cause is remanded to the district court, with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.