## CROFT v. MILLARD COUNTY DRAINAGE DIST. NO. 1
## et al.

No. 3711.   Decided November 21, 1921.   (202 Pac. 539.)

1.  DRAINS—DRAINAGE DISTRICT A BODY CORPORATE AND POLITIC.
    Laws 1919, c. 41, p. 88, § 1, expressly provides that a district
    organized thereunder is a body corporate and politic, and has
    perpetual succession and the right to sue and be sued.

2.  DRAINS—LAW HELD TO CONTEMPLATE THAT DAMAGES MAY RESULT
    FROM CONSTRUCTION AND OPERATION OF WORKS. Laws 1919, c. 41,
    pp. 90, 91, § 1, requiring the supervisors of a district, among
    other things, to determine and make findings on the damages
    that may result from the construction and operation of the
    works, etc., contemplates that such damages may result there-
    from.

3.  DRAINS—DRAINAGE DISTRICT A VOLUNTARY CORPORATION, AND NOT
    IMMUNE FROM TORTS. A drainage district organized under Laws
    1919, c. 41, p. 88, § 1, is not an involuntary corporation for gov-
    ernmental purposes, and is not immune from torts on the theory
    that they are merely agents of the state.

4.  EMINENT DOMAIN—DRAINAGE DISTRICT LIABLE FOR DAMAGE TO
    PROPERTY OWNERS.   The primary steps toward creating of a
    drainage district under Drainage Act (Laws 1919, c. 41, p. 84)
    § 1, is by petition of landowners who will be benefited, and the
    district is a corporation created for private benefit of persons
    owning land within the boundaries, and it is liable to property
    owners for any damage it may do within the scope of its pow-
    ers as a drainage district, under Const. art. 1, § 22.[1]

5.  DRAINS—DRAINAGE DISTRICT, OFFICERS, AND AGENTS NOT IMMUNE
    FROM RESPONSIBILITY FOR DAMAGE TO PROPERTY OWNERS.   Drain-
    age districts created for private benefit are liable for injury to
    property, and officers and agents responsible for the damage
    are not immune.

[1] *Lund v. Salt Lake County*, 58 Utah 546, 200 Pac. 510.

6. DRAINS—DRAINAGE DISTRICT AUTHORIZED TO PROCURE FUNDS TO
PAY DAMAGES. Drainage Act (Laws 1919, c. 41, pp. 91, 98) § 1,
under which drainage districts are created, contemplates that
damages shall be ascertained and paid for, and, by implication,
the district is authorized to procure funds for that purpose.

Appeal from District Court, Fifth District, Millard
County; *Wm. F. Knox*, Judge.

Action by Mary Croft against Millard County Drainage
District No. 1 and others. Judgment for defendants, and
plaintiff appeals.

REVERSED AND REMANDED.

*Baker & Baker*, of Provo, for appellant.

*J. A. Melville, Jr.*, of Salt Lake City, for respondents.

THURMAN, J.

Plaintiff brought this action against the defendants, Mil-
lard county drainage district No. 1, its board of super-
visors, and individual members thereof, to recover damages
for alleged injuries to her land situate in Millard county,
contiguous to said district, and by her complaint she seeks
injunctive relief.

Plaintiff alleges in her complaint that the pipe line, ditches,
and conduits used and maintained by said defendants for
drainage purposes were constructed along the side of, near
to, and upon her land against her will and without her con-
sent, and that said pipe line, ditches, and conduits were im-
properly constructed so that the water would not flow freely
through the same, and because of the failure of defendants to
keep the same in repair water, liquids, alkalies, and other im-
purities from such drainage district were and are discharged
into and upon her said land, thereby destroying the crops
growing thereon, rendering the land unfit for farming pur-

poses and greatly impairing its value. Plaintiff prays for damages and for injunctive relief.

Defendants filed a general demurrer to plaintiff's complaint, which demurrer was overruled. They then filed their answer, denying liability. The cause was tried to the court without a jury. At the trial defendants stipulated that plaintiff be awarded injunctive relief as prayed for in her complaint, but objected to the introduction of evidence in support of her claim for damages, on the alleged ground that neither a drainage district organized under the laws of Utah nor the officers thereof are liable for such damages as are alleged in plaintiff's complaint, and for the further reason that no funds are provided for the payment of such damages. The court sustained the objection. Judgment was entered for defendants as to the question of damages, and plaintiff appeals.

Respondents' contention is best stated in the language of their brief:

"The respondents contend that the defendant drainage district is a quasi municipal corporation organized for a special purpose—that is, the drainage of the lands embraced within the boundaries of the district—and that it only has certain limited powers, and is only authorized to raise funds for drainage purposes by special assessment on the property benefited, and that it is not liable in damages for the negligent acts of its supervisors, and that it has no power to collect taxes to pay judgments for damages, and that the other defendants are sued in their official capacity as such supervisors, and are not charged personally, or at all, with having committed a tort, and therefore they cannot be held personally liable in an action of damages."

In support of their contention, respondents cite the following cases: *Elmore* v. *Drainage Com'rs*, 135 Ill. 269, 25 N. E. 1010, 25 Am. St. Rep. 363; *Sels* v. *Greene* (C. C.) 81 Fed. 555; *Malim* v. *Benthein* (Wash.) 196 Pac. 7; 15 Am. & Eng. Ency. L. 1143; *Sherbourne* v. *Yuba County*, 21 Cal. 113, 81 Am. Dec. 151; *Chope* v. *City of Eureka*, 78 Cal. 588, 21 Pac. 364, 4 L. R. A. 325, 12 Am. St. Rep. 113; 15 C. J. 568 and 569.

In *Elmore* v. *Drainage Com'rs, supra*, the syllabus succinctly states the doctrine upon which respondents rely:

"A drainage district, being a mere public involuntary quasi corporation, only authorized to raise funds for drainage purposes by special assessment on the property benefited, is not liable in damages for the tortious or negligent acts of its commissioners."

The doctrine is elaborated more fully in the body of the opinion at page 273 of 135 Ill., at page 1011 of 25 N. E. (25 Am. St. Rep. 363) :

"That a private corporation, formed by voluntary agreement for private purposes, is held to respond in a civil action for its negligence or tort, goes without saying; and yet, in deciding the mooted question at issue in this case, it seems convenient to restate that proposition. So also it is admitted law that municipal corporations proper, such as villages, towns, and cities, which are incorporated by special charters, or voluntarily organize under general laws, are liable to individuals injured by their negligent or tortious conduct, or that of their agents or servants, in respect to corporate duties. In regard to public involuntary quasi corporations the rule is otherwise, and there is no such implied liability imposed upon them. These latter, such as counties, townships, school districts, road districts, and other similar quasi corporations, exist under general law of the state which apportion its territory into local subdivisions for the purposes of civil and governmental administration, and impose upon the people residing in said several subdivisions precise and limited public duties and clothe them with restricted corporate functions, coextensive with the duties devolved upon them. In such organizations the duties and their correlative powers are assumed in invitum, and there is no responsibility to respond in damages in a civil action for neglect in the performance of duties, unless such action is given by statute"—citing cases.

That case, however, was the subject of consideration in a later decision by the same court (*Bradbury* v. *Vandalia Levee & Drain. Dist.*, 236 Ill. 36, 86 N. E. 163, 19 L. R. A. [N. S.] 991, 15 Ann. Cas. 904), in which the case was criticized and distinguished to such an extent as to practically nullify its effect as an authority for respondents in the case at bar.

Respondents further state the general rule to be that drainage districts can neither sue nor be sued unless authorized by statute. Many cases are cited, but it is unnecessary to devote time or space to their consideration. The 8, 2 statute of this state (Sess. Laws 1919, p. 88) expressly provides that a drainage district organized as provided in that act is a body corporate and politic with the right to sue

and be sued and to have perpetual succession. It is also contemplated in the act that damages may result from the construction and operation of the works and the supervisors are required to determine the same and make findings thereon. Sess. Laws Utah 1919, pp. 90, 91.

A drainage district, under the act, is not an involuntary corporation created for governmental purposes, and consequently is not immune to the same extent as counties are from civil liability for torts on the theory that they          **3** are merely agents of the state. *Bradbury* v. *Vandalia Levee & Drain. Dist., supra,* 236 Ill. 36, 86 N. E. 163, 19 L. R. A. (N. S.) 996, 15 Ann. Cas. 904; *Bunting* v. *Oak Creek Drainage Dist.,* 99 Neb. 843, 157 N. W. 1028, L. R. A. 1918B, 1004; *Bungenstock* v. *Nishnabotna Drainage Dist.,* 163 Mo. 198, 64 S. W. 149; *Leary* v. *Drain Com'rs,* 172 N. C. 25, 89 S. E. 803; *Linn* v. *Walla Walla Co.,* 99 Wash. 324, 169 Pac. 323; *Handfelder* v. *East Side Levee, etc., Dist.,* 194 Ill. App. 262.

By reference to the drainage act referred to (Laws 1919, p. 84, § 2041) it will be seen that the primary step towards the creation of a drainage district is by petition of landowners who will be benefited thereby, and while in a sense the district is a matter of public concern and clothed with the powers of eminent domain and other attributes of sovereignty in a limited degree, it is nevertheless, in          **4** other essential respects a corporation created merely for the private benefit of persons owning land within the boundaries of the corporation. It is difficult to understand upon what principle such a corporation can claim the right to enter upon the land of another and perpetrate wrongs thereon resulting in a substantial injury, and, when confronted in a court of justice with a claim for damages, undertake to defend itself upon some technical application of the antiquated idea that the "king can do no wrong," or, if he does, the wrong is simply damnum absque injuria. In the darkest ages of mediæval history, when despotic rule flourished among the semibarbarous nations of the Old World, it was even then considered barely tolerable to assert in behalf of kingly rule the doctrine that the "king can do no wrong."

Upon what principle, then, in the twentieth century of the Christian Era, in the most enlightened age of the world, in a free American commonwealth, should a voluntary corporation, created solely for private benefit, be permitted to invoke the same doctrine in order to escape the consequences of wrongs either deliberately or carelessly perpetrated against the property rights of another? Even the state itself, when acting within the scope of its sovereign powers, cannot take or damage private property for public use without making just and adequate compensation to the person to whom the property belongs. The Utah Constitution (article 1, § 22) declares:

"Private property shall not be taken or damaged for public use without just compensation."

This is a fundamental law of the commonwealth, binding upon every department of the state government. It is the duty of the courts to give it full force and effect whenever it is properly invoked by one claiming its protection, even as against the sovereign power of the state.

We had occasion in a very recent case to consider this provision of the Constitution and distinguish cases in which the provision may or may not be invoked. *Lund* v. *Salt Lake County*, 58 Utah 596, 200 Pac. 510. In that case we held there was neither a taking nor a damaging of private property for a public use. The distinction readily occurs upon a casual reading of the opinion.

Whatever may be the rule under the Constitution and laws of other jurisdictions upon which respondents rely for authority, this court is of opinion that under our Constitution and laws a drainage district organized and doing business as such is liable to the owner of property for any damage it may do within the scope of its powers as a drainage district.

In view of the manner of their creation and the purposes and objects for which they are created, we know of no reason why they should not be held liable for wrongs of the nature described in plaintiff's complaint. Furthermore, if the drainage district is liable for the wrongs complained of, it is difficult to see upon what principle its

officers and agents by whom the wrongs were perpetrated, can be held immune from responsibility.

As to the question of funds to pay for such damages we are of opinion that the act itself, especially provisions found on pages 91 and 98, Sess. Laws, 1919, clearly **6** contemplate that such damages shall be ascertained and paid for, and, by necessary implication, the district is authorized to procure funds for that purpose in the same manner that funds are procured by the district for other legitimate purposes.

The judgment of the trial court is reversed and the cause remanded, with directions to grant the plaintiff a new trial; costs of appeal to be taxed against respondents.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.