William J. COLMAN, Plaintiff
and Appellant,

v.

UTAH STATE LAND BOARD; Ralph
Miles, Director, Utah Division of State
Lands and Forestry, Utah Department
of Natural Resources; and Southern
Pacific Transportation Company, a De-
laware corporation, Defendants and
Appellees.

No. 860331.

Supreme Court of Utah.

April 12, 1990.

Rehearing Denied July 20, 1990.

Carol Clawson, Gary Bendinger, Salt Lake City, for Colman.

R. Paul Van Dam, Dallin W. Jensen, Michael M. Quealy, R. Douglas Credille, Salt Lake City, for State appellees.

L. Ridd Larson, Thomas L. Kay, Craig L. Taylor, Salt Lake City, for Southern Pacific.

STEWART, Justice:

William J. Colman filed an action against the Utah State Land Board and against Ralph Miles, Director of the Utah Division of State Lands and Forestry of the Department of Natural Resources (referred to collectively as "the State"), and against Southern Pacific Transportation Company for the destruction of an underwater brine canal Colman maintained on the bed of the Great Salt Lake. The trial court dismissed the complaint, and Colman appealed.

## I. FACTS

This case arose out of the breach of the Great Salt Lake causeway on August 1, 1984. The causeway is a raised bed of fill which crosses the lake in an east-west direction. Southern Pacific runs a railroad line over the causeway. The causeway was constructed in 1959 by Southern Pacific after obtaining a right-of-way for its construction from the state of Utah.

The Great Salt Lake Causeway Act (the "Act"), 1984 Utah Laws ch. 32, enacted during the 1984 budget session of the Utah legislature, authorized breaching the causeway as a response to the rapid rise of the water level in the lake. During this same session, the legislature amended the Utah Governmental Immunity Act to limit the liability of governmental entities for management of flood waters. Utah Code Ann. § 63–30–3; 1984 Utah Laws ch. 33, § 1.

Prior to the breach of the causeway by the State and Southern Pacific, Colman operated and maintained a five-mile-long un-

derwater brine canal running parallel to and approximately 1,300 feet north of the causeway. The canal was authorized by a lease and easement granted by the State. The brine canal was used in Colman's business of extracting minerals from deep lake brines.

On July 20, 1984, Colman filed a complaint in the Third District Court seeking (1) to enjoin the State and Southern Pacific from breaching the causeway, and (2) to recover monetary damages for the damage the breach would cause his property if the court did not grant the injunction.

Colman's mineral extraction operation was located on the western shore of the lake. The canal began near that point and ran five miles eastward into the lake. Colman alleged that for his mineral extraction operation to be economically feasible, it was necessary for him to draw brines from the deeper strata of the lake, where the brines are more dense. His complaint alleged that he had dredged and maintained the canal so that its bottom was at a constant elevation. Colman alleged that the canal made it possible for him to pump the deep-water brines into his mineral extraction operation.

Colman alleged that the breach of the causeway would cause water from the south arm of the lake to flow through the breach under great pressure and cut through the canal banks. He also claimed that the breach would create turbidity and sedimentation, making the use of the canal as a brine conduit impossible.

The trial court denied Colman's motion for a preliminary injunction on July 31, 1984, after an evidentiary hearing, and the causeway was breached the following day. On August 20, 1984, the State filed a motion to dismiss Colman's damage claims. That motion was granted by the trial court May 2, 1986. The trial court concluded that (1) the Utah Governmental Immunity Act immunized the State from liability, (2) the breach of the causeway was a valid exercise of the police powers of the State, (3) the breach of the causeway was in furtherance of the State's public trust responsibilities, and (4) there was no compensable taking of a property interest.

## II. STANDARD OF REVIEW

A dismissal is a severe measure and should be granted by the trial court only if it is clear that a party is not entitled to relief under any state of facts which could be proved in support of its claim. *Liquor Control Comm'n v. Athas,* 121 Utah 457, 460, 243 P.2d 441, 443 (1952). The courts are a forum for settling controversies, and if there is any doubt about whether a claim should be dismissed for the lack of a factual basis, the issue should be resolved in favor of giving the party an opportunity to present its proof. *Baur v. Pacific Fin. Corp.,* 14 Utah 2d 283, 284, 383 P.2d 397, 397 (1963). On this appeal, we look solely to the material allegations of Colman's complaint, not to the evidence presented at the preliminary injunction hearing. In their briefs and at oral argument, the State and Southern Pacific rely extensively on the evidence presented at the preliminary injunction hearing to support their position. We do not, however, consider this evidence on this appeal. *See* Utah R.Civ.P. 12(b). Colman's complaint was dismissed on a rule 12 motion to dismiss. When reviewing a dismissal based on rule 12, an appellate court must accept the material allegations of the complaint as true, *Petersen v. Jones,* 16 Utah 2d 121, 122, 396 P.2d 748, 748 (1964), and the trial court's ruling should be affirmed only if it clearly appears that Colman can prove no set of facts in support of his claim. *Arrow Industries, Inc. v. Zions First Nat'l Bank,* 767 P.2d 935, 936 (Utah 1988); *Freegard v. First Western Nat'l Bank,* 738 P.2d 614, 616 (Utah 1987); *Wells v. Walker Bank & Trust Co.,* 590 P.2d 1261, 1263 (Utah 1979).

The State argues in its supplemental brief that "[t]here is no virtue in rigid adherence to a technical rule that has no practical bearing on the proper outcome of a particular case." We decline to follow the State's suggestion that we should ignore the Utah Rules of Civil Procedure. The "technical rule" the State refers to is found in rule 12(b), which provides that a

motion to dismiss for failure to state a claim upon which relief can be granted shall be treated as a motion for summary judgment under rule 56 if matters outside the pleadings are presented to and not excluded by the court. However, the rule provides that if a motion to dismiss is converted to a motion for summary judgment, it must only be done so as to not create procedural prejudice to one of the parties. The rule states, "[A]ll parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Utah R.Civ.P. 12(b). This rule gives the opposing party an opportunity to gather evidence to rebut the movant's evidence. Without such a rule, one party could have the benefit of significant, supporting evidence while the other party would be left to rely solely on the unsubstantiated pleadings.

This rule has much "practical bearing on the proper outcome" of this case. The State and Southern Pacific moved for dismissal based on Colman's failure to state a claim upon which relief could be granted. Colman responded to these motions with a memorandum opposing the motions to dismiss, which focused exclusively on points of law. Colman appears to have assumed at that point that the rule 12 standard would be followed. His memorandum began by stating, "For purposes of a motion to dismiss, the truth of the Complaint's fact allegations must be assumed." Colman was not given reasonable opportunity to present additional evidence pursuant to rule 12(b). Had Colman known that the State would rely on the preliminary injunction evidence, he could have submitted other evidence to the trial court rebutting that evidence.

Furthermore, the trial court treated the motion to dismiss only under rule 12 and not under rule 56. The trial court did not make any factual findings in denying Colman's motion for a preliminary injunction. The trial court specifically stated that it only ruled that plaintiff had not met his burden of proof for a preliminary injunction and that its ruling was not dispositive of any other issues. The trial court also refused to order Colman to order the tran-

script of the preliminary injunction proceedings for this appeal. In granting the State's motion to dismiss, the trial court only entered conclusions of law.

Finally, if a trial court cannot on its own motion convert a rule 12 motion to dismiss to a Rule 56 motion for summary judgment, *Hill v. Grand Central, Inc.*, 25 Utah 2d 121, 123, 477 P.2d 150, 151 (1970), then certainly we should not allow the moving party to do so on appeal.

## III. TAKING OR DAMAGING PROPERTY

### A. Was Colman's canal "property" for purposes of article I, section 22?

Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." A claimant must possess some protectible interest in property before that interest is entitled to recover under this provision. Colman alleged that the Utah Division of State Lands and Forestry granted him, as part of a lease with the state, an easement for the maintenance and operation of the canal. It has always been accepted in this state that even an implied easement is a property interest protectible under article I, section 22. *Utah State Road Comm'n v. Miya*, 526 P.2d 926, 928–29 (Utah 1974); *Hampton v. State ex rel. Road Comm'n*, 21 Utah 2d 342, 345, 445 P.2d 708, 710 (1968); *Dooly Block v. Salt Lake Rapid Transit Co.*, 9 Utah 31, 37, 33 P. 229, 231–32 (1893). An express easement, such as that alleged by Colman, is also "private property" for the purposes of article I, section 22. *See Whiterocks Irrigation Co. v. Mooseman*, 45 Utah 79, 79–80, 141 P. 459, 460 (1914); Utah Code Ann. § 78-34-2(2) (Supp.1989). *Nichols on Eminent Domain* states, "An easement is an interest in land, and it is taken in the constitutional sense when the land over which it is exercised is taken; but if it is only destroyed and ended, a destruction for public purposes may also be an appropriation for the same purpose." 2 *Nichols on Eminent Domain* § 5.14, at 5–186 (3d ed.1989) (citing *United States v.*

*Welch,* 217 U.S. 333, 339, 30 S.Ct. 527, 54 L.Ed. 787 (1910)).

A lessee holding under a valid lease also has a property interest protected by the takings clause of the constitutional provisions:

It has been judicially established that lessees for years or from year to year, holding under a valid devise, grant, or lease, have such an interest in property as to be classed as "owners" in the constitutional sense, and to be entitled to compensation for the taking of their interest. . . .

2 *Nichols on Eminent Domain* § 5.06, at 5–97 to 101 (3d ed.1989).

We conclude that Colman has alleged a property interest protectible under article I, section 22 of the Utah Constitution. We emphasize again that we regard the allegations of the complaint as true. We do not look to evidence presented at the preliminary injunction hearing. Colman cannot recover if the State proves that in fact there was no canal or that Colman had no legal rights in the canal. Colman can only recover for the taking of property to the extent that property exists and to the extent he has legal rights in that property.

B. *Was Colman's canal "taken or damaged" for purposes of article I, section 22?*

Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." This Court has previously outlined what constitutes a taking and what constitutes damage under this constitutional provision.

In *State ex rel. State Road Commission v. District Court, Fourth Judicial District,* 94 Utah 384, 78 P.2d 502 (1937), the Court stated that a "taking" is "any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed." 94 Utah at 394, 78 P.2d at 506 (quoting *Stockdale v. Rio Grande Western Ry. Co.,* 28 Utah 201, 211, 77 P. 849, 852 (1904)); *see Hampton v.*

*State Road Comm'n,* 21 Utah 2d 342, 347, 445 P.2d 708, 711–12 (1968). This Court has also defined the term "damage" for the purpose of article I, section 22 and for the purpose of the eminent domain statute in *Board of Education of Logan City School District v. Croft,* 13 Utah 2d 310, 373 P.2d 697 (1962). In that case, the Court cited article I, section 22 and stated:

Damages to land, by the construction of a public or industrial improvement, though no part thereof is taken as provided for under 78–34–10(3), contrary to the rule for severance damages, is limited to injuries that would be actionable at common law, or where there has been some physical disturbance of a right, either public or private, which the owner enjoys in connection with his property and which gives it additional value, and which causes him to sustain a special damage with respect to his property in excess of that sustained by the public generally.

13 Utah 2d at 313–14, 373 P.2d at 699; *see State ex rel. Road Comm'n v. Williams,* 22 Utah 2d 331, 334, 452 P.2d 881, 883–84 (1969); *Twenty–Second Corporation of Church of Jesus Christ of Latter–Day Saints v. Oregon Short Line R.R.,* 36 Utah 238, 247, 103 P. 243, 246 (1909) ("[T]o bring the case within the damage clause of the Constitution, there must be some physical interference with the property itself or with some easement which constitutes an appurtenant thereto."). The Court went on to explain that such "damage" requires a "definite physical injury cognizable to the senses with a perceptible effect on the present market value." *Croft,* 13 Utah 2d at 314, 373 P.2d at 699. The Court listed various types of injuries that would be compensable as "damage" under the constitutional provision. These included "drying up wells and springs," "destroying lateral supports," "preventing surface waters from running off adjacent lands or running surface waters onto adjacent lands," or "depositing of cinders and other foreign materials on neighboring lands by the permanent operation of the business or improvement established on the adjoining

lands." *Croft*, 13 Utah 2d at 314, 373 P.2d at 699–700.

In our recent case of *Rocky Mountain Thrift Stores, Inc. v. Salt Lake City Corp.*, 784 P.2d 459 (Utah 1989), we stated: "Plaintiffs alleged that damages [from the flooding] resulted from a temporary, one-time occurrence and not a permanent, continuous, or inevitably recurring interference with property rights usually associated with and requisite in a compensable taking." 784 P.2d at 465 (citing *Sanguinetti v. United States*, 264 U.S. 146, 149, 44 S.Ct. 264, 265, 68 L.Ed. 608 (1924); *Accardi v. United States*, 220 Ct.Cl. 347, 356–57, 599 F.2d 423, 429 (1979); *Miotke v. City of Spokane*, 101 Wash.2d 307, 334, 678 P.2d 803, 818 (1984)). *See also Loretto v. Teleprompter Manhattan · CATV Corp.*, 458 U.S. 419, 428, 102 S.Ct. 3164, 3172, 73 L.Ed.2d 868 (1982).

■ Colman alleged in his complaint that the breach would result in the total destruction of at least a 300–foot segment of the canal. He also alleged that the breach would create such turbidity in the area of the canal that the remaining portions of the canal would be filled with sediment over much of its course. Colman alleged that the breach would require that he move the canal and pumps to another location free from the current caused by the breach. We conclude that Colman has alleged a permanent or recurring interference with property rights. Thus, Colman has alleged sufficient facts to constitute a "taking" or "damage" under article I, section 22.

C. *Was Colman's property "taken or damaged" or merely regulated under the State's general police powers?*

The State suggests that because the breach of the causeway was a valid exercise of the State's police powers, it is not liable for the damage caused to Colman. However, in *Utah State Road Commission v. Miya*, 526 P.2d 926 (Utah 1974), we plainly stated, "The constitutional guarantee of just compensation for the taking or damaging of private property for public use is in no way affected by the fact that the expro-

priator ... exercis[ed] the police power." 526 P.2d at 928.

The State seems to have misled itself on this point by relying on isolated language from discussions of a related but different issue. It is true that the courts will not disturb the legislature's judgment in the exercise of the general police powers as long as it does not violate constitutional limits. *Salt Lake City v. Young*, 45 Utah 349, 355, 145 P. 1047, 1048–49 (1915). The police powers are not, however, beyond the limitations established by the constitution. *Bountiful City v. De Luca*, 77 Utah 107, 125–26, 292 P. 194, 202 (1930).

The emphasis the State places on the police powers is often made when there is a close issue that turns on the difference between a taking or damage under article I, section 22 and mere regulation of property and activities on property. Many statutes and ordinances regulate what a property owner can do with and on the owner's property. Those regulations may have a significant impact on the utility or value of property, yet they generally do not require compensation under article I, section 22. Only when governmental action rises to the level of a taking or damage under article I, section 22 is the State required to pay compensation.

Previous cases of this Court have wrestled with the issue. In *Bountiful City v. De Luca*, the Court stated:

> Broad and comprehensive as are the police powers of the state, still we think it may not successfully be contended that the power may be so exercised as to infringe upon or invade rights safeguarded and guaranteed by constitutional provisions.... The cases are numerous to the effect that ... the state may without compensation regulate and restrain the use of private property when the health, safety, morals, or welfare of the public requires or demands it; ... that the exercise of proper police regulations may to some extent prevent enjoyment of individual rights in property or cause inconvenience or loss to the owner, does not necessarily render the police law unconstitutional, for the reason that

such laws are not considered as appropriating private property for a public use, but simply as regulating its use and enjoyment, and if the owner through a lawful exercise of the power suffers inconvenience, injury, or a loss, it is regarded as damnum absque injuria, *provided always, that constitutional mandates have not been invaded by a confiscation, destruction, or deprivation of property*, unless it is per se injurious or obnoxious or a menace to public health or public safety or morals or general welfare, or unless under conditions similar to tearing down a building to prevent spreading of a conflagration; *but however broad the scope of the police power, it is always subject to the rule that the Legislature may not exercise any power expressly or impliedly forbidden by constitutional provisions.*

77 Utah at 119–121, 292 P. at 199–200 (emphasis added). In *Salt Lake City v. Young*, 45 Utah 349, 362, 145 P. 1047, 1051 (1915), we held that "a landowner cannot complain because he is inconvenienced in the use of his property, where such inconvenience arises out of the proper enforcement of the police power to protect the public health, and where such enforcement does not amount to a taking or destruction of his property."

■ Here, Colman argues that the State's actions were not a mere regulation of property, but constituted an actual physical taking. It is not relevant that the State's action in this case was a valid exercise of its police power. Rather, the issue is whether sufficient facts were alleged to show a taking of property.

■ It is not alleged that Colman was causing a nuisance on the property. Thus, the case does not fall into the exception for the abatement of nuisances.

D. *Does the State avoid liability because its action was in response to an emergency?*

The State argues that no liability should be imposed on it because the breach destroyed the canal to avert an overwhelming destruction of property. Colman argues,

however, that that principle only applies when the plaintiff's property would have been destroyed by the emergency condition irrespective of the governmental action.

Colman correctly states that many of the cases involve situations where the plaintiff's property would have been destroyed by the emergency even if there had been no governmental action. *See United States v. Caltex (Philippines), Inc.*, 344 U.S. 149, 73 S.Ct. 200, 97 L.Ed. 157 (1952); *Sanguinetti v. United States*, 264 U.S. 146, 149, 44 S.Ct. 264, 265, 68 L.Ed. 608 (1924). Colman argues that the "emergency" created by the higher lake waters did not affect the operation of the canal. However, the trial court must determine whether Colman's canal would have been in danger without the breach.

Other cases dealing with emergencies and eminent domain can be distinguished because they involve questions of proper regulation and the use of the police power as discussed above. *See Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); *Teresi v. State*, 180 Cal.App.3d 239, 225 Cal.Rptr. 517 (1986). These cases do not involve a direct physical taking, as is alleged in this case.

■ However, all of the cases dealing with this emergency doctrine cannot be distinguished on these bases. The State argues correctly that in some cases there is no liability where property is destroyed by a governmental entity to prevent imminent public catastrophe. The privilege to take or damage private property without compensation arises from the necessity of sacrificing some property to prevent overwhelming damage or loss of life. This privilege is based on the privilege of any individual to take immediate action that harms property so as to prevent loss of life or great destruction of property. *City of Rapid City v. Boland*, 271 N.W.2d 60, 65 (S.D.1978). This exception to the general requirement of just compensation for property taken is explained in 1 *Nichols on Eminent Domain* §§ 1.43[1] and 1.43[2]:

More closely allied to the power of eminent domain is the power of destruc-

tion from necessity. In the case of fire, flood, pestilence or other great public calamity, when immediate action is necessary to save human life or to avert an overwhelming destruction of property, any individual may lawfully enter another's land and destroy his property, real or personal, providing he acts with reasonable judgment.

. . . .

If the individual who enters and destroys private property happens to be a public officer whose duty it is to avert an impending calamity, the rights of the owner of the property to compensation are no greater than in the case of a private individual. The most familiar example of the exercise of this right is seen in case of fire. The neighbors and fireman freely trespass on the adjoining land, and houses are even blown up to prevent the spread of the conflagration. The danger of flood or the existence of a pestilence may call for equally drastic action. However, the permanent appropriation of private property without the payment of compensation therefor cannot be justified under the power.

1 *Nichols on Eminent Domain* §§ 1.43[1], 1.43[2], at 1–841 to 843 (3d ed.1989) (footnotes omitted). This exception only applies where there is an extreme, imperative, or overwhelming necessity. Mere expediency is insufficient. *Boland,* 271 N.W.2d at 66. There must be "circumstances of imminent necessity." *Srb v. Board of County Comm'rs,* 43 Colo.App. 14, 18, 601 P.2d 1082, 1085 (1979), *cert. denied as improvidently granted,* 199 Colo. 496, 618 P.2d 1105 (1980). This exception must be narrowly construed. Almost every act of taking property under the eminent domain powers involves some degree of public necessity. This exception could overcome the rule of just compensation if it is not limited to only the most extreme emergencies. In *McKell v. Spanish Fork City,* 6 Utah 2d 92, 305 P.2d 1097 (1957), this Court outlined how a governmental entity or any riparian owner could protect itself against extraordinary floods without liability:

However, it is generally recognized that riparian owners may embank and protect their lands against the overflow of *extraordinary* floods, even though damage to the lands of others is caused thereby. An extraordinary flood is one which is not foreshadowed by the usual course of nature, and is of such a magnitude and destructiveness as could not have been anticipated or provided against by the exercise of ordinary foresight.

*McKell,* 6 Utah 2d at 95–96, 305 P.2d at 1099 (emphasis in original). *McKell* involved an extraordinary flood. Here, it is a question of fact whether the rising water level constituted an "extraordinary flood" and whether there were otherwise circumstances of overwhelming necessity. These questions cannot be decided on the basis of the pleadings and will have to be decided at trial.

■ Also involved in this case is the State's role in creating the emergency. Colman alleged that Southern Pacific is the owner of a right-of-way granted by the State over the bed of the lake for the construction of the causeway. It appears that the State played some role in the construction of the causeway, and the causeway seems to be the major factor in causing the "emergency" the State is now claiming. It is more difficult to find an emergency of overwhelming necessity when the State played a part in creating the circumstances causing the emergency. *See McKell,* 6 Utah 2d at 96–97, 305 P.2d at 1099–1100.

*Nichols on Eminent Domain* makes clear that the permanent appropriation of property without compensation does not fit into this exception. 1 *Nichols on Eminent Domain* § 1.43[2], at 1–843 (3d ed.1989); *see Short v. Pierce County,* 194 Wash. 421, 435–36, 78 P.2d 610, 616 (1938). In this case, Colman alleges a permanent taking of his property. This is another question of fact for the trial court to determine.

On remand, the trial court must determine whether the emergency exception applies in this instance. To fall within this exception, the trial court must find that the flooding created a situation of extreme, imperative, or overwhelming necessity. In

addition, the exception is not applicable if the State played a foreseeable role in causing the emergency.

## IV. SOVEREIGN IMMUNITY

Colman's complaint states a cause of action for inverse condemnation of his property. Colman alleged that the destruction of his canal constitutes a taking of his property without just compensation in violation of article I, section 22 of the Utah Constitution. The State and Southern Pacific claim that they are immune from this inverse condemnation claim under the Utah Governmental Immunity Act. Utah Code Ann. § 63–30–1 to –38. (1989).[1] The issue is whether an inverse condemnation claim under article I, section 22 is subject to the limitations found in the Governmental Immunity Act.

This Court has struggled since the turn of the century to reconcile the doctrine of sovereign immunity with article I, section 22 of the Utah Constitution, which provides simply that "[p]rivate property shall not be taken or damaged for public use without just compensation." Early and recent cases provide valuable insight into the meaning of this provision.

The delegates to the Constitutional Convention in 1895 spent a great deal of time formulating and debating the language of article I, section 22. The debates show that the delegates believed that the provision limited state government and was not merely advice that the legislature could choose to follow if it wished. *See Proceedings and Debates of the Constitutional Convention*, 326–344, 623–53 (1898). The specific issue of the relation between sovereign immunity and article I, section 22 never arose in these debates. However, the more general issue of the role of the constitution in relation to the role of legislature

was frequently discussed during the debates on article I, section 22. Throughout these discussions, the delegates assumed that article I, section 22 would be a limitation on the state and that further legislation would provide no less protection than that mandated by article I, section 22. *Proceedings and Debates of the Constitutional Convention*, 625, 629–33 (1898) (indicating that the delegates saw the constitutional provision as the minimum expected of the state and the legislature). The framers of the Utah Constitution expected it to act as a real limit on the powers of the state. The framers certainly did not intend to allow state government to override the constitutional guarantee with a legislative enactment.

This Court originally held that article I, section 22 was self-executing. *Webber v. Salt Lake City*, 40 Utah 221, 224, 120 P. 503, 504 (1911). Later, the Court switched to a position that the state was immune from suit for damages under the doctrine of sovereign immunity and that article I, section 22 was not self-executing. *Fairclough v. Salt Lake County*, 10 Utah 2d 417, 354 P.2d 105 (1960). We now reaffirm that article I, section 22 is self-executing. In doing so, clarity requires that we specify the cases that the Court overrules.

The question of whether article I, section 22 is self-executing involves the issue of whether the constitutional provision requires a legislative enactment to be enforced in the courts. As the law developed in this state, the question of whether article I, section 22 is self-executing gave rise to the specific issue of whether the legislature can block enforcement of article I, section 22 against the state or its political subdivisions by a grant of immunity.

In *Stockdale v. Rio Grande Western Ry. Co.*, 28 Utah 201, 77 P. 849 (1904), the

---

1. In 1987, the legislature waived its asserted immunity by adding § 63–30–10.5 to the Utah Governmental Immunity Act. 1987 Utah Laws ch. 75, § 3. That section provides:

    (1) Immunity from suit of all governmental entities is waived for the recovery of compensation from the governmental entity when the governmental entity has taken or damaged private property without just compensation.

    (2) Compensation and damages shall be assessed according to the requirements of Chapter 34, Title 78.

    However, this provision was not in place at the time this cause of action arose and does not apply here.

Court stated that "a party whose property is about to be specially damaged in any substantial degree for public use has the same rights and is given the same remedies for the protection of his property from the threatened injury as would be accorded him if his property was actually taken and appropriated for such use." 28 Utah at 213, 77 P. at 853. *See State ex rel. State Road Commission v. District Court, Fourth Judicial Dist.*, 94 Utah 384, 393, 78 P.2d 502, 506 (1937). In *Stockdale*, the Court referred to the discussions in the Constitutional Convention to support that proposition. 28 Utah at 213, 77 P. at 853. Nevertheless, the Court later ignored the principle that "takings" and "damages" should be afforded the same remedies.

In *Webber v. Salt Lake City*, 40 Utah 221, 120 P. 503 (1911), the Court explicitly held that article I, section 22 was self-executing and the right to recover consequential damages for damage to property did not rely on legislative enactment. 40 Utah at 224, 120 P. at 504; *see Coalter v. Salt Lake City*, 40 Utah 293, 298, 120 P. 851, 853 (1912) ("Consequential damages to property which are caused by making public improvements are recoverable under the Constitution of this state, and not by virtue of a statute.").

*Wilkinson v. State*, 42 Utah 483, 134 P. 626 (1913), did not deal with article I, section 22, but it seems to have led to confusion in subsequent decisions dealing with sovereign immunity in the context of that provision. *See Fairclough v. Salt Lake County*, 10 Utah 2d 417, 425, 354 P.2d 105, 110–11 (1960) (Wade, J., dissenting). In *Wilkinson*, the plaintiff sought recovery from a state fund for damage to his property caused by flooding from a canal the state had constructed. The Court stated that without the consent of the state an action against the sovereign could not be maintained: "We have neither a statute nor a constitutional provision authorizing a suit against the state." 42 Utah at 492, 134 P. at 630.

Eight years later, the Court again stated that article I, section 22 was binding on the state as sovereign. In *Croft v. Millard*

*County Drainage District No. 1*, 59 Utah 121, 202 P. 539 (1921), the Court stated:

Even the state itself, when acting within the scope of its sovereign powers, cannot take or damage private property for public use without making just and adequate compensation to the person to whom the property belongs.

This is a fundamental law of the commonwealth, binding upon every department of the state government. It is the duty of the courts to give it full force and effect whenever it is properly invoked by one claiming its protection, *even as against the sovereign power of the state.*

59 Utah at 126, 202 P. at 541 (emphasis added).

*Campbell Building Co. v. State Road Commission*, 95 Utah 242, 70 P.2d 857 (1937), was like *Wilkinson* in holding that an action could not be maintained against the state without its consent. It was also like *Wilkinson* in that it did not deal with article I, section 22.

*State ex rel. State Road Commission v. District Court, Fourth Judicial District*, 94 Utah 384, 78 P.2d 502 (1937), held that the individual commissioners of the State Road Commission could be enjoined from pursuing a highway project until payments for consequential damage were made to property owners. Because this action was brought before the improvement was constructed, the property owners sought an injunction, not damages. Because of this, the Court did not consider in depth the relation of sovereign immunity to article I, section 22. The Court simply stated that the state could not be sued without its consent and cited *Wilkinson* and *Campbell* as authority. 94 Utah at 389, 78 P.2d at 504. As mentioned above, neither of those cases dealt with sovereign immunity in the context of an article I, section 22 claim.

The Court did state, however, that "it is clear that the framers of the Constitution did not intend to give the rights granted by section 22, and then leave the citizen powerless to enforce such rights." 94 Utah at 397, 78 P.2d at 508. The Court then stated in dicta that if an injunction would not

adequately protect the constitutional right, then the state could be found to have consented to suit against itself under article I, section 22. 94 Utah at 399, 78 P.2d at 509.

Nevertheless, this and other similar dicta were soon ignored in the later cases. *Anderson Investment Corp. v. State*, 28 Utah 2d 379, 503 P.2d 144 (1972); *Hjorth v. Whittenburg*, 121 Utah 324, 241 P.2d 907 (1952). In *Hjorth*, the Court held that the road commissioners individually could not be sued for consequential damages done to property in regrading for a highway project. 121 Utah at 330, 241 P.2d at 909. Chief Justice Wolfe concurred and stated that *Hjorth* overruled *State ex rel. State Road Commission v. District Court, Fourth Judicial District*, 94 Utah 384, 78 P.2d 502 (1937). *Hjorth*, 121 Utah at 331, 241 P.2d at 910.

In *Springville Banking Co. v. Burton*, 10 Utah 2d 100, 349 P.2d 157 (1960), the plaintiff tried to circumvent sovereign immunity and the holding in *Hjorth* by seeking a writ of mandamus to compel the members of the State Road Commission to initiate eminent domain proceedings to assess consequential damages to the plaintiff's property. The Court held that sovereign immunity could not be circumvented in that way. *Springville Banking*, 10 Utah 2d at 103, 349 P.2d at 159.

In *Fairclough v. Salt Lake County*, 10 Utah 2d 417, 354 P.2d 105 (1960), we held that "Art. I, Sec. 22 of our Constitution is not self-executing, nor does it give consent to be sued, implied or otherwise; and that to secure such consent is a legislative matter...." 10 Utah 2d at 419, 354 P.2d at 106 (footnotes omitted). *Fairclough* was followed in *State ex rel. Road Commission v. Parker*, 13 Utah 2d 65, 368 P.2d 585 (1962), and in *Holt v. Utah State Road*

*Commission*, 30 Utah 2d 4, 511 P.2d 1286 (1973).

In *Hampton v. State ex rel. Road Commission*, 21 Utah 2d 342, 445 P.2d 708 (1968), the Court took a less restrictive position on the issue of compensation from the state. In *Hampton*, the plaintiffs' right of access to their property was interfered with by the construction of Interstate 15. The Court held that the state had given its consent to be sued for the *taking* of property under Utah Code Ann. § 78-11-9 (1953). The Court held that if the action of the state amounted to a "substantial and material impairment of access to their property," then it constituted a taking requiring compensation from the state. 21 Utah 2d at 348, 445 P.2d at 712. Thus, the Court made it possible for the plaintiff to recover by classifying the plaintiffs' damages as a taking, for which immunity had been waived by statute, rather than as damage, for which the plaintiff could not recover under *Fairclough*.

*Andrus v. State*, 541 P.2d 1117 (Utah 1975), held the state liable because the state's conduct, which led to the damages sustained by the plaintiffs, fell within the Governmental Immunity Act, Utah Code Ann. § 63-30-9 (1953), although Judge Bullock, sitting *pro tempore*, dissented and argued that article I, section 22 was self-executing and should be applied. 541 P.2d at 1122 (Bullock, D.J., dissenting). In dissent in separate cases, Justice Wade and Judge Bullock both cited many cases from other states holding that similar state constitutional provisions are self-executing. *See Andrus v. State*, 541 P.2d at 1123 n. 6 (Bullock, D.J., dissenting); *Springville Banking Co. v. Burton*, 10 Utah 2d at 105-09, 349 P.2d at 159-62 (Wade, J., dissenting). Today the overwhelming majority of states with similar constitutional provisions hold them to be self-executing.[2]

2. The following states hold their constitutional provisions requiring just compensation for taking or damaging private property to be self-executing or otherwise binding on the state.
*ALABAMA.* Ala. Const. art. I, § 23 ("[B]ut private property shall not be taken for, or applied to public use, unless just compensation be first made therefor...."); *City of Fairhope v. Raddcliffe*, 48 Ala.App. 224, 229, 263 So.2d 682, 686

(1972) (authority to sue for damage caused by negligent construction of sewer system arises from Alabama constitution, not from statutory waiver of sovereign immunity).
*ALASKA.* Alaska Const. art. I, § 18 ("Private property shall not be taken or damaged for public use without just compensation."); *State, Dept. of Highways v. Crosby*, 410 P.2d 724, 728–

29 (Alaska 1966) (basis of action was article I, section 18 of the Alaska constitution).

*ARIZONA.* Ariz. Const. art. II, § 17 ("No private property shall be taken or damaged for public or private use without just compensation having first been made...."); *Pima County v. Bilby,* 87 Ariz. 366, 370, 351 P.2d 647, 649 (1960) ("This Court has previously held section 17, article 2, of the Arizona Constitution to be self-executing *(County of Mohave v. Chamberlin,* 78 Ariz. 422, 281 P.2d 128 (1955)), and it is perfectly clear that the absence of enabling legislation cannot deprive plaintiff of his constitutional right to just compensation for any of his private property which is 'taken or damaged' by the County.").

*CALIFORNIA.* Cal. Const. art. I, § 19 ("Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."); *Pacific Outdoor Advertising Co. v. City of Burbank,* 86 Cal.App.3d 5, 9, 149 Cal.Rptr. 906, 909 (1978) ("[Article I, section 19] requires no statutory implementation, since it is self-executing."); *Rose v. State,* 19 Cal.2d 713, 726, 123 P.2d 505, 513 (1942) ("Immunity from suit cannot avail in this instance, and, if no statute exists, liability still exists, because as to this provision the Constitutions are self-executing.") (quoting *Chick Springs Water Co. v. State Hwy. Dept.,* 159 S.C. 481, 157 S.E. 842 (1931)).

*COLORADO.* Colo. Const. art. II, § 15 ("Private property shall not be taken or damaged, for public or private use, without just compensation."); *Srb v. Bd. of County Commissioners,* 43 Colo App. 14, 19, 601 P.2d 1082, 1085 (1979) (the just compensation clause of the Colorado constitution creates an exception to the doctrine of governmental immunity), *cert. denied as improvidently granted,* 199 Colo. 496, 618 P.2d 1105 (1980).

*GEORGIA.* Ga. Const. art. I, § 3, ¶ 1 ("[P]rivate property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."); *Fulton County v. Baranan,* 240 Ga. 837, 838, 242 S.E.2d 617, 619 (1978) (action for damage done to private property by county not barred by statute granting counties immunity from liability).

*ILLINOIS.* Ill. Const. art. I, § 15 ("Private property shall not be taken or damaged for public use without just compensation as provided by law."); *People ex rel. Alexander v. City of Mount Vernon,* 404 Ill. 58, 66, 88 N.E.2d 45, 49 (1949) ("The provision of the constitution guaranteeing compensation if property is taken or damaged for public use is self-executing, requires no legislation for its enforcement, and cannot be impaired by legislation or ordinance.").

*KENTUCKY.* Ky. Const. § 13 ("[N]or shall any man's property be taken or applied to public use without the consent of his representatives and without just compensation being previously made to him."); *Holloway Constr. Co. v. Smith,* 683 S.W.2d 248 (Ky.1984) (state waives immunity for suits under takings clause); *Kentucky Bell Corp. v. Commonwealth,* 295 Ky. 21, 25, 172

S.W.2d 661, 663 (1943) (the constitutional provisions "support the rule that ... where a trespass ... amounts to [a] taking, the state's immunity from suit is waived ...").

*LOUISIANA.* La. Const. art. I, § 4 ("Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation...."); *Reymond v. State ex rel. Dep't. of Highways,* 255 La. 425, 447, 231 So.2d 375, 383 (1970) (constitutional provision supports suit for inverse condemnation by property owner); *Angelle v. State,* 212 La. 1069, 1076, 34 So.2d 321, 323 (1948) ("This provision, which is similar to that appearing in other State Constitutions, has been generally regarded as self-executing.").

*MINNESOTA.* Minn. Const. art. I, § 13 ("Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."); *State v. Prow's Motel, Inc.,* 285 Minn. 1, 171 N.W.2d 83 (1969) (property owner is entitled to damages for constitutional taking).

*MISSISSIPPI.* Miss. Const. art. III, § 17 ("Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof...."); *State Highway Comm'n v. Mason,* 192 Miss. 576, 593, 4 So.2d 345, 349 (1941) ("It would be a mockery for the Constitution to guarantee a right to the property owner, and a duty on the taker thereof, and leave the enforcement of both dependent upon the legislative will.").

*MISSOURI.* Mo. Const. art. I, § 26 ( [P]rivate property shall not be taken or damaged for public use without just compensation."); *Page v. Metropolitan St. Louis Sewer Dist.,* 377 S.W.2d 348, 354 (Mo.1964) ("While the state cannot be sued without its consent, and there is no statutory provision authorizing such suits, nevertheless, 'if the injury alleged is a damage within the constitutional provision, that provision is self-enforcing.' ") (quoting *Anderson v. Inter–River Drainage & Levee Dist.,* 309 Mo. 189, 274 S.W. 448, 455 (1925)).

*MONTANA.* Mont. Const. art. II, § 29 ("Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss...."); *City of Three Forks v. State Highway Comm'n,* 156 Mont. 392, 398, 480 P.2d 826, 830 (1971) (the constitutional provision prohibiting the taking or damaging of private property without just compensation waives the immunity of the state where that provision applies).

*NEBRASKA.* Neb. Const. art. I, § 21 ("The property of no person shall be taken or damaged for public use without just compensation therefor."); *Kula v. Prososki,* 219 Neb. 626, 629, 365 N.W.2d 441, 443 (1985) ("[Article I, section 21] of the Constitution is self-executing, and legislative action is not necessary to make the remedy available.").

*NEW MEXICO.* N.M. Const. art. II, § 20 ("Private property shall not be taken or damaged for

The history of these cases shows that for a time the Court's concentration on the doctrine of sovereign immunity caused it to neglect this constitutional provision, which was designed to protect individual rights. This elevation of legislation and common law principles over a clear constitutional limitation strikes at the heart of constitutional government. The people of Utah established the Utah Constitution as a limitation on the power of government. It can hardly be maintained that the doctrine of sovereign immunity, alone among all doctrines, is outside of the limitations the peo-

---

public use without just compensation."); *McClure v. Town of Mesilla*, 93 N.M. 447, 448, 601 P.2d 80, 81 (Ct.App.1979) (citing *Summerford v. Board of Comnr's of Dona Ana County*, 35 N.M. 374, 379, 298 P. 410, 413 (1931) (plaintiff property owner could base suit on article II, section 20)).

*NORTH DAKOTA.* N.D. Const. art. I, § 16 ("Private property shall not be taken or damaged for public use without just compensation...."); *Jamestown Plumbing & Heating Co. v. City of Jamestown*, 164 N.W.2d 355, 358 (N.D.1968) ("We have held on numerous occasions that under this constitutional provision the owner may maintain an action to recover damages for the taking of his property and for consequential damages to his property resulting from a public use.").

*SOUTH DAKOTA.* S.D. Const. art. VI, § 13 ("Private property shall not be taken for public use, or damaged, without just compensation...."); *Hurley v. State*, 82 S.D. 156, 170, 143 N.W.2d 722, 729 (1966) ("In the absence of an adequate remedy provided by the legislature which condemnees may invoke in such cases, Section 13, Article VI of our Constitution is deemed to be self-executing granting them a right of trial by jury in the circuit courts of our state.").

*TEXAS.* Tex. Const. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made...."); *San Antonio River Authority v. Lewis*, 363 S.W.2d 444, 449 (Tex.1962) ("The provisions of Section 17, Article I of the Constitution of Texas applies as well to the State and its agencies as to private corporations.").

*VIRGINIA.* Va. Const. art. I, § 11 ("[N]or any law whereby private property shall be taken or damaged for public uses, without just compensation...."); *Heldt v. Elizabeth River Tunnel Dist.*, 196 Va. 477, 482, 84 S.E.2d 511, 515 (1954) ("It is well settled that such a constitutional provision is self-executing and the landowner may enforce his constitutional right to compensation in a common-law action.").

*WASHINGTON.* Wash. Const. art. I, § 16 ("No private property shall be taken or damaged for public or private use without just compensation having been first made...."); *Kincaid v. City of Seattle*, 74 Wash. 617, 621, 134 P. 504, 506 (1913) ("The city is bound to make compensation under a compact no less formal than the constitution itself, and it cannot defeat this constitutional right by a charter provision or an ordinance, nor can the legislature take it away by any arbitrary requirement....").

*WEST VIRGINIA.* W.Va. Const. art. III, § 9 ("Private property shall not be taken or damaged for public use, without just compensation...."); *Johnson v. City of Parkersburg*, 16 W.Va. 402, 422–23 (1880) ("I have nowhere seen it contended that the clause of a Constitution, which declares, that 'private property shall not be taken for public use without just compensation,' requires legislation to put it in force. It has always been regarded as self executing. It is a limitation, not only upon the rights of individuals and corporations, but also upon the Legislatures of the States." The court proceeds to hold that the result is the same if the constitutional provision covers damages as well.).

*WYOMING.* Wyo. Const. art. I, § 33 ("Private property shall not be taken or damaged for public or private use without just compensation."); *State Highway Comm'n v. Peters*, 416 P.2d 390, 395 (Wyo.1966) ("However, the legislature cannot infringe upon or take from property owners the right to be compensated, according to the requirement of art. I, § 33.").

The law in three states differs from the positions of these courts.

*ARKANSAS.* Ark. Const. art. II, § 22 ("[A]nd private property shall not be taken, appropriated or damaged for public use, without just compensation therefor.") (law on this issue is unclear).

*OKLAHOMA.* Okla. Const. art. II, § 24 ("Private property shall not be taken or damaged for public use without just compensation."); *State ex rel. Department of Transp. v. Hoebel*, 594 P.2d 1213, 1214–15 (Okla.1979) (under the Oklahoma constitution, a claim in inverse condemnation for a taking for a public use is not subject to sovereign immunity, but a claim for damages is).

*PENNSYLVANIA.* Pa. Const. art. I, § 10 ("[N]or shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."). The law on this issue is not clear in Pennsylvania, but a recent case indicates that the Pennsylvania Supreme Court would hold it to be self-executing. *Hughes v. Commonwealth Dept. of Transp.*, 514 Pa. 300, 306, 523 A.2d 747, 750 (1987) ("What is 'just compensation' cannot be determined by the exclusive fiat of the General Assembly, for like all others they cannot be the judge in their own case. The determination of what is 'just' between the Commonwealth and a condemnee is the function of the judiciary.").

ple established. In *Dean v. Rampton*, 556 P.2d 205 (Utah 1976), we stated:

> The purpose of a constitution is to provide an orderly foundation for government and to keep even the sovereign ... within its bounds. Therefore, the legislative power itself must be exercised within the framework of the constitution. Accordingly, it has been so long established and universally recognized, as to be hardly necessary to state, that if a statutory enactment contravenes any provision of the constitution, the latter governs.

556 P.2d at 206–07 (citing *Marbury v. Madison*, 1 Cranch 137, 2 L.Ed. 60 (1803)).

In sum, article I, section 22 needs no legislation to activate it; it is mandatory and obligatory as it is. *See* Utah Const. art. I, § 24.

The trial court concluded that Southern Pacific acted as the State's contractor on the causeway breach project and was therefore protected by the State's immunity. Since we hold that the State is not immune, Southern Pacific can no longer depend on the State's immunity. We express no opinion as to Southern Pacific's argument of derivative immunity based on its status as the State's contractor for the project.

## V. PUBLIC TRUST DOCTRINE

█ The trial court held that the breaching of the causeway was in furtherance of the State's public trust responsibilities and that the State could not be liable for the damage allegedly done to Colman's canal. The State maintains that it can take any action relating to the lake that is in the public interest and be immune from liability for that action. Colman argues that the public trust doctrine does not apply to flood control, but only to certain limited purposes, such as commerce, fishing, navigation, and perhaps recreational use and preservation of ecological integrity.

The controlling case on this issue is *Illinois Central R.R. Co. v. Illinois*, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892), where the United States Supreme Court discussed the public trust doctrine and held that the Illinois legislature's earlier grant

to the railroad of lands submerged under Lake Michigan could be revoked by a later legislature because the earlier grant was in violation of the public trust the state held over the waters.

The essence of this doctrine is that navigable waters should not be given without restriction to private parties and should be preserved for the general public for uses such as commerce, navigation, and fishing. Recent cases have examined this doctrine in deciding whether the state could grant uses of public waters to private parties. *See, e.g., Kootenai Envtl. Alliance, Inc. v. Panhandle Yacht Club, Inc.*, 105 Idaho 622, 671 P.2d 1085 (1983).

This case, however, presents a different problem. The State has already exercised its powers under the public trust in leasing the canal on the bed of the lake to Colman. Now, the State wishes to revoke that grant without compensation to Colman. The State maintains that it can do so since it holds the waters of the lake under the public trust. In taking such a position, the State essentially argues that it originally acted without authority in granting the lease to Colman.

*Illinois Central* provides some guidance on this question. The Supreme Court stated:

> But the decisions are numerous which declared that such property is held by the State, by virtue of its sovereignty, in trust for the public. The ownership of the navigable waters of the harbor and of the lands under them is a subject of public concern to the whole people of the State. The trust with which they are held, therefore, is governmental and cannot be alienated, *except* in those instances mentioned of parcels used in the improvement of the interest thus held, or *when parcels can be disposed of without detriment to the public interest in the lands and waters remaining.*

146 U.S. at 455–56, 13 S.Ct. at 119 (emphasis added). The Supreme Court made clear that a state can grant certain rights in navigable waters if those rights can be disposed of without affecting the public

interest in what remains. 146 U.S. at 453, 13 S.Ct. at 118. At this point in the litigation, there is nothing to show that Colman's canal impaired the public interest in any way at the time the State granted him the right to conduct his operation. This is a question of fact to be decided by the trial court.

## VI. SPECIAL LEGISLATION

Colman argues on appeal that the Great Salt Lake Causeway Act (the "Act") was beyond legislative authority and constituted special legislation in violation of article VI, section 26 of the Utah Constitution. Article VI, section 26 provides, "No private or special law shall be enacted where a general law can be applicable." In this case, the Act provided indemnity to Southern Pacific for actions arising out of the breach of the causeway.

▮▮▮ The fact that legislation benefited one individual does not prove a violation of article VI, section 26. *Hulbert v. State*, 607 P.2d 1217, 1223 (Utah 1980). The standards for judging challenged legislation under this provision were stated by this Court in *Utah Farm Bureau Insurance Co. v. Utah Insurance Guaranty Association*, 564 P.2d 751 (Utah 1977):

> A general law applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to themselves in the matters covered by the laws in question. On the other hand, special legislation relates either to particular persons, places, or things or to persons, places or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied.
> ... [A] law is general when it applies equally to all persons embraced in a class founded upon some natural, intrinsic, or constitutional distinction. It is special legislation if it confers particular privileges or imposes peculiar disabilities, or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily selected, from the general body of those who stand in precisely the

same relation to the subject of the law. The constitutional prohibition of special legislation does not preclude legislative classification, but only requires the classification to be reasonable.

564 P.2d at 754 (following *State v. Kallas*, 97 Utah 492, 505, 94 P.2d 414, 420 (1939); *People v. Western Fruit Growers, Inc.*, 22 Cal.2d 494, 506, 140 P.2d 13, 19–20 (1943)).

In the Act, the legislature found that extreme weather conditions had caused the water level in the lake to rise sharply, causing severe flood damage. 1984 Utah Laws ch. 32, § 1. It also found that the causeway had caused the water level in the south arm of the lake to be significantly higher than the water level in the north arm. The legislature declared it to be in the public interest to breach the causeway and authorized the Division of State Lands and Forestry to do so. The legislature then stated: "In order to obtain the cooperation of the Southern Pacific Railroad which is necessary for the timely accomplishment of the objectives of this act, the division is authorized to enter into formal agreement with the railroad for indemnification as follows...." 1984 Utah Laws ch. 32, § 2.

This legislation makes a reasonable classification to accomplish its purposes of preventing widespread flood damage to public lands, major transportation routes, and other public facilities. Southern Pacific owns the causeway. This statute does not discriminate against anyone since Southern Pacific is the owner of the causeway and the operator of the railway that crosses the causeway. The Act is not special legislation in violation of article VI, section 26.

## VII. CONCLUSION

The trial court's dismissal of plaintiff's complaint is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

HALL, C.J., and HOWE, Associate C.J., concur.

ZIMMERMAN, Justice: (concurring).

I join in all of Justice Stewart's opinion. However, as to part IIIB, which holds that the allegations of Colman's complaint are sufficient to state a claim for a taking or damaging under article I, section 22 of the Utah Constitution, I would observe that the precise limits of a taking or damaging have yet to be carefully or consistently spelled out by this court. *Three D Corp. v. Salt Lake City*, 752 P.2d 1321, 1324–25 (Utah Ct.App.1988). There will be time enough for us to carefully consider this question in future cases.

DURHAM, J., concurs in the concurring opinion of ZIMMERMAN, J.